# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| ANDREW RANACIS, Derivatively on Behalf of TARGET CORPORATION, | |
| *Plaintiff*, | |
| v. | Case No. 0:25-cv-02743-NEB-SGE |
| BRIAN C. CORNELL, DAVID P. ABNEY, DOUGLAS M. BAKER, JR., GEORGE S. BARRETT, GAIL K. BOUDREAUX, ROBERT L. EDWARDS, DONALD R. KNAUSS, CHRISTINE A. LEAHY, MONICA C. LOZANO, GRACE PUMA, DERICA W. RICE, DIMITRI L. STOCKTON, MELANIE L. HEALEY, and MARY E. MINNICK, | |
| *Individual Defendants*, | |
| -and- | |
| TARGET CORPORATION, | |
| *Nominal Defendant.* | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, DEFENDANTS' UNOPPOSED MOTION TO STAY

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 4

I.    THE DERIVATIVE ACTIONS MUST BE DISMISSED BECAUSE
      PLAINTIFF FAILED TO MAKE A DEMAND ON TARGET'S BOARD. .......... 4

      A.    Minnesota's SLC Statute Provides a "Road to Redress." ............................ 4

      B.    Plaintiff's "Substantial Likelihood of Liability" Excuse Fails. ................... 6

II.   PLAINTIFF HAS NOT STATED ANY VIABLE CLAIM. ................................... 8

      A.    The Section 14(a) Claim Fails To Connect Any Misrepresentation to
            a Cognizable Injury. ..................................................................................... 8

            1.    Plaintiff's Section 14(a) Claim Cannot Be Brought
                  Derivatively Under Minnesota Law. ................................................. 8

            2.    Plaintiff Has Not Adequately Pled a Section 14(a) Violation. .......... 9

      B.    The Breach of Fiduciary Duty Claim Must Be Dismissed. ........................ 18

            1.    Plaintiff Fails to State a Duty of Loyalty Claim. ............................ 18

            2.    Plaintiff Fails to State a Duty of Care Claim. ................................. 25

III.  THE DERIVATIVE ACTIONS SHOULD BE STAYED DURING THE
      PENDENCY OF THE SECURITIES ACTIONS. ................................................ 26

      A.    A Stay Is Necessary To Avoid Prejudice to Target. ................................... 27

      B.    A Stay Would Streamline the Issues and Promote Judicial Economy. ....... 29

      C.    Plaintiff Does Not Oppose A Stay. ............................................................. 29

CONCLUSION ............................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2007 Novastar Fin., Inc. Sec. Litig.*,
  579 F.3d 878 (8th Cir. 2009) ................................................................... 12

*In re 3M Co. Sec. Litig.*,
  20-cv-2488, 2021 WL 4482987 (D. Minn. Sept. 30, 2021) ....................... 14

*Abbey v. Control Data Corp.*,
  603 F.2d 724 (8th Cir. 1979) ............................................................. 11, 12

*Abrahamson v. Waddell*,
  624 N.E.2d 1118 (Ohio Com. Pl. 1992) ................................................... 20

*Amanda Acquisition Corp. v. Universal Foods Corp.*,
  708 F. Supp. 984 (E.D. Wis. 1989), *aff'd*, 877 F.2d 496 (7th Cir. 1989)................... 20

*Arora v. HDFC Bank Ltd.*,
  671 F. Supp. 3d 305 (E.D.N.Y. 2023) ...................................................... 14

*Bakhaty v. CHI St. Vincent Hot Springs*,
  24-cv-00757, 2025 WL 1568838 (E.D. Ark. June 3, 2025) ........................ 25

*Baron v. Strawbridge & Clothier*,
  646 F. Supp. 690 (E.D. Pa. 1986) ........................................................... 20

*Matter of Bear Stearns Litig.*,
  23 Misc. 3d 447 (N.Y. Sup. Ct. Dec. 4, 2008)............................................ 23

*Benson v. Harpstead*,
  22-cv-1601, 2023 WL 4936733 (D. Minn. June 29, 2023) ......................... 25

*In re BP p.l.c. Sec. Litig.*,
  843 F. Supp. 2d 712 (S.D. Tex. 2012) ...................................................... 14

*Breault v. Folino*,
  8:01-cv-0826, 2002 WL 31974381 (C.D. Cal. Mar. 15, 2002) ...................... 27, 28, 29

*Brenner v. Albrecht*,
  6514-VCP, 2012 WL 252286 (Del. Ch. Jan. 27, 2012)............................... 27

*In re Buca, Inc. Shareholder Deriv. Litig.*,
    05-cv-4418, 2005 WL 6750825 (Minn. Dist. Ct. Nov. 9, 2005) .............................. 6, 7

*Buckley v. Control Data Corp.*,
    923 F.2d 96 (8th Cir. 1991) .................................................................................... 9

*Campbell v. Transgenomic, Inc.*,
    916 F.3d 1121 (8th Cir. 2019) ............................................................................... 10

*In re Caremark Int'l Derivative Litig.*,
    698 A.2d 959 (Del. Ch. 1996) .......................................................................... 20, 21

*Carpenters' Pens. Fund of Ill. v. Neidorff*,
    30 F.4th 777 (8th Cir. 2022) ...................................................................... 2, 8, 10, 15

*In re Cerner Corp. Sec. Litig.*,
    425 F.3d 1079 (8th Cir. 2005) ............................................................................... 12

*Chen v. Howard-Anderson*,
    87 A.3d 648 (Del. Ch. 2014) ................................................................................. 19

*In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*,
    435 F. Supp. 3d 845 (N.D. Ill. 2020), *aff'd sub nom. Barry v. Cboe*
    *Glob. Markets, Inc.*, 42 F.4th 619 (7th Cir. 2022) ....................................... 17

*In re Citigroup Inc. S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009) .......................................................................... 14, 17

*U.S. ex rel. Coster v. United States*,
    317 F.3d 883 (8th Cir. 2003) ................................................................................. 16

*Cottrell on behalf of Wal-Mart Stores, Inc. v. Duke*,
    829 F.3d 983 (8th Cir. 2016) ................................................................................... 4

*Diedrick v. Helm*,
    14 N.W.2d 913 (Minn. 1944) ................................................................................. 18

*Dietz v. Spangenberg*,
    11-cv-2600, 2013 WL 4610530 (D. Minn. Aug. 29, 2013)................................... 18

*Dixon v. Ladish Co.*,
    785 F. Supp. 2d 746 (E.D. Wis. 2011).................................................................. 20

*Dunning v. Bush*,
    536 F.3d 879 (8th Cir. 2008) ................................................................................. 18

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
   594 F.3d 783 (11th Cir. 2010) ..................................................................... 11

*Elam v. Neidorff*,
   544 F.3d 921 (8th Cir. 2008) ....................................................................... 13

*In re First Solar Deriv. Litig.*,
   12-cv-00769, 2012 WL 6570914 (D. Ariz. Dec. 17, 2012)................................ 28, 29

*Freedman v. magicJack Vocaltec Ltd.*,
   963 F.3d 1125 (11th Cir. 2020) .................................................................... 9

*Gen. Elec. Co. v. Cathcart*,
   980 F. 2d 927 (3d Cir. 1992)........................................................................ 11, 12

*Gerring Props. v. Gerring*,
   27-cv-16-12570, 2017 WL 10662042 (Minn. Dist. Ct. Nov. 28, 2017)..................... 7

*In re Glob. Serv. Grp.*,
   316 B.R. 451 (Bankr. S.D.N.Y. 2004) .......................................................... 20

*Gomes v. Am. Century Companies, Inc.*,
   710 F.3d 811 (8th Cir. 2013) ....................................................................... 5

*Gut v. MacDonough*,
   2007-1083-C, 2007 WL 2410131 (Mass. Super. Aug. 14, 2007).............................. 20

*Holdahl v. Bioergonomics*,
   27-cv-10-24236, 2012 WL 3061774 (Minn. Dist. Ct. Feb. 8, 2012),
   *aff'd*, A12-1495, 2013 WL 401885 (Minn. Ct. App. Feb. 4, 2012) ........................ 26

*Horizon Asset Mgmt. Inc. v. H&R Block, Inc.*,
   580 F.3d 755 (8th Cir. 2009) ....................................................................... 16

*Hueler v. Seeland*,
   27-cv-11-15606, 2012 WL 7749256 (Minn. Dist. Ct. Dec. 5, 2012) ........................ 7

*In re Hutchinson Tech., Inc. Sec. Litig.*,
   536 F.3d 952 (8th Cir. 2008) ....................................................................... 13, 14

*Iron Workers Mid-S. Pension Fund v. Davis*,
   93 F. Supp. 3d 1092 (D. Minn. 2015)............................................................. 21, 22

*Iron Workers Mid-S. Pension Fund v. Davis*,
   13-cv-289, 2013 WL 6858567 (D. Minn. Dec. 30, 2013) ..................................... 20

*J.I. Case Co. v. Borak*,
377 U.S. 426 (1964) ................................................................. 9

*In re K-tel Int'l, Inc. Sec. Litig.*,
300 F.3d 881 (8th Cir. 2002) ................................................. 4

*Kamen v. Kemper Fin. Servs.*,
500 U.S. 90 (1991) ............................................................. 4, 9

*Kitley v. IsoRay, Inc.*,
16-cv-3297, 2017 WL 4737244 (D. Minn. Oct. 19, 2017) ................ 7

*Kococinski v. Collins*,
935 F. Supp. 2d 909 (D. Minn. 2013) ................................. 6, 25

*La. Mun. Police Emps. Ret. Sys. v. Finkelstein*,
27-cv-11-23986, 2012 WL 10057353 (Minn. Dist. Ct. May 29, 2012) .............. 6, 7

*Lee v. Fisher*,
70 F.4th 1129 (9th Cir. 2023) ................................................. 9

*Lee v. Frost*,
21-cv-20885, 2021 WL 3912651 (S.D. Fla. Sept. 1, 2021) ................. 14

*Little Gem Life Scis. v. Orphan Med.*,
537 F.3d 913 (8th Cir. 2008) ........................................... 10, 15

*Lusk v. Akradi*,
15-cv-1911, 2017 WL 3382301 (D. Minn. Aug. 6, 2017) ............. 18, 19, 21

*McDonald v. Abizaid*,
17-cv-907, 2018 WL 692006 (N.D. Ohio Feb. 2, 2018) ................. 29

*In re Medtronic, Inc. Deriv. Litig.*,
68 F. Supp. 3d 1054 (D. Minn. 2014) .............................. 1, 6, 7

*In re Medtronic, Inc.*,
27-cv-14-11452, 2015 WL 1387937 (Minn. Dist. Ct. Mar. 20, 2015),
*aff'd*, A15-0858, 2016 WL 281237 (Minn. Ct. App. Jan. 25, 2016), *aff'd
in part, rev'd in part on other grounds*, 900 N.W.2d 401 (Minn. 2017) ........ 9

*In re Medtronic, Inc. S'holder Litig.*,
900 N.W.2d 401 (Minn. 2017) ............................................... 8

*Miller v. Miller*,
222 N.W.2d 71 (Minn. 1974) ............................................... 18

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ............................................................................. 8

*Nat'l Ctr. for Pub. Pol'y Rsch. v. Schultz*,
    2:22-cv-00267, 2023 WL 5945958 (E.D. Wash. Sept. 11, 2023) .............................. 23

*In re Navarre Corp. Sec. Litig.*,
    299 F.3d 735 (8th Cir. 2002) ................................................................... 13

*Nw. Racquet Swim and Health Clubs, Inc. v. Deloitte & Touche*,
    535 N.W.2d 612 (Minn. 1995) ............................................................. 2, 9

*In re Ormat Techs., Inc.*,
    3:10-cv-00177, 2011 WL 3841089 (D. Nev. Aug. 29, 2011) .................................. 28

*Pemberton ex rel. Patterson Cos. v. Anderson*,
    412 F. Supp. 3d 1058 (D. Minn. 2019) ................................................. 1, 5, 7

*In re Paypal Holdings, Inc. S'holder Deriv. Litig.*,
    17-cv-00162, 2018 WL 466527 (N.D. Cal. Jan. 18, 2018) .................................. 11

*In re PetroChina Co. Ltd. Sec. Litig.*,
    120 F. Supp. 3d 340 (S.D.N.Y. 2015) ........................................................ 14

*Potter v. Pohlad*,
    560 N.W.2d 389 (Minn. App. 1997) .......................................................... 18

*In re PXRE Sec. Litig.*,
    600 F. Supp. 2d 510 (S.D.N.Y.), *aff'd*, 357 F. App'x 393 (2d Cir. 2009) .................. 17

*Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) .............................................................. 10, 15

*Rosenblum v. Sharer*,
    07-cv-6140, 2008 WL 9396534 (C.D. Cal. July 28, 2008) .................................. 27, 28

*Ross v. Bernhard*,
    396 U.S. 531 (1970) ........................................................................ 28

*SEC v. Shanahan*,
    646 F.3d 536 (8th Cir. 2011) ............................................................ 10, 15

*Sellers v. Lawson*,
    08-cv-60374, 2009 WL 10698793 (S.D. Fla. Mar. 30, 2009) ........................ 27, 28, 29

*Silverado Park Ass'n v. Country Mut. Ins. Co.*,
    742 F. Supp. 3d 910 (D. Minn. 2024) ........................................................ 27

*Simeone v. Walt Disney Co.*,
    302 A.3d 956 (Del. Ch.) .............................................................................. 23

*Staehr v. W. Cap. Res., Inc.*,
    10-cv-1806, 2011 WL 2633894 (D. Minn. July 6, 2011) ............................. 9

*In re STEC, Inc. Deriv. Litig.*,
    10-cv-00667, 2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) ................... 28, 29

*Stone v. Ritter*,
    911 A.2d 362 (Del. 2006) ....................................................................... 20, 21

*In re Target Corp. Sec. Litig.*,
    275 F. Supp. 3d 1063 (D. Minn. 2017), *aff'd*, 955 F.3d 738 (8th Cir.
    2020) ......................................................................................................... 13

*TCI Bus. Cap. v. Five Star Am. Die Casting*,
    890 N.W.2d 423 (Minn. App. 2017) ........................................................... 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ..................................................................................... 4

*In re Trade Desk, Inc. Deriv. Litig.*,
    2022-0461-PAF, 2025 WL 503015 (Del. Ch. Feb. 14, 2025) ...................... 6

*In re Tupperware Brands Corp. S'holder Deriv. Litig.*,
    6:20-cv-908, 2020 WL 14032216 (M.D. Fla. Oct. 28, 2020) ..................... 29

*United Food & Com. Workers Union v. Zuckerberg*,
    262 A.3d 1034 (Del. 2021) .......................................................................... 6

*In re UnitedHealth Grp. S'holder Deriv. Litig.*,
    754 N.W.2d 544 (Minn. 2008) .......................................................... 5, 6, 26

*Va. Bankshares, Inc. v. Sandberg*,
    501 U.S. 1083 (1991) ...................................................................... 10, 11, 12

*In re Verso Techs., Inc.*,
    09-cv-1293, 2010 WL 11598054 (N.D. Ga. June 30, 2010) ...................... 25

*In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*,
    12-cv-4041, 2015 WL 13375767 (W.D. Ark. Apr. 3, 2015), *aff'd*, 829
    F.3d 983 (8th Cir. 2016) .............................................................................. 16

*Ward v. El Rancho Manana, Inc.*,
    945 N.W.2d 439 (Minn. App. 2020)........................................................ 28

*Winter v. Farmers Educ. & Coop. Union of Am.*,
    107 N.W.2d 226 (Minn. 1961)........................................................ 4, 5, 7

*In re Wynn Resorts, Ltd. Deriv. Litig.*,
    2:18-cv-00293, 2019 WL 1429526 (D. Nev. Mar. 29, 2019)...............................*passim*

*Hastey ex rel. YRC Worldwide, Inc. v. Welch*,
    449 F. Supp. 3d 1053 (W.D. Kan. 2020) ............................................... 11

*Yu v. Frost*,
    18-cv-24060, 2019 WL 5225059 (S.D. Fla. Aug. 1, 2019) ................................ 28, 30

*Ziglar v. Abbasi*,
    582 U.S. 120 (2017)........................................................ 9

**Statutes**

Minn. Stat. §302A.241 ........................................................ 2, 4, 5, 7

Minn. Stat. §302A.251 ........................................................ 20, 25

Minn. Stat. §302A.255 ........................................................ 19

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................ 8

Fed. R. Civ. P. 23.1(b) ........................................................ 4

**Other Authorities**

Aaron Rachelson, *Corporate Acquisitions, Mergers, and Divestitures* §8:54
    (2025) ........................................................ 20

Matheson & Garon, 18 Minn. Prac., Corporation Law & Practice §10:3 (3d
    ed. 2013)........................................................ 2, 6

## INTRODUCTION

Defendants respectfully submit this brief in support of their motion to dismiss this action with prejudice or, in the alternative, their unopposed motion to stay the action pending resolution of earlier-filed securities actions (the "Securities Actions").[1]

<u>Dismissal</u>.  The Court should dismiss this shareholder derivative case for numerous reasons.  Most fundamentally, Plaintiff has failed to make a demand on Target's Board.  Derivative claims belong to the corporation, not its shareholders.  Thus, Rule 23.1 and applicable Minnesota law require a shareholder plead their efforts to obtain the desired conduct from the Board before bringing suit.  As courts in this District have repeatedly held, absent extraordinary circumstances, Minnesota law requires dismissal when a shareholder fails to make such a demand—as is undisputed here, Compl. ¶106.  *See, e.g.*, *Pemberton ex rel. Patterson Cos. v. Anderson*, 412 F. Supp. 3d 1058, 1062-65 (D. Minn. 2019) (dismissing derivative action for failure to make pre-suit demand); *In re Medtronic, Inc. Deriv. Litig.*, 68 F. Supp. 3d 1054, 1067 (D. Minn. 2014) (denying preliminary injunction in derivative case as plaintiffs had "no chance of success on the merits" because they failed to bring a pre-suit demand).

Plaintiff alleges that he is excused from making a demand because the full Board faces a substantial likelihood of liability.  He argues that renders any demand futile because the Board would not be able to disinterestedly consider it.  But Minnesota courts

---

[1] *Craig v. Target Corp.*, 2:23-cv-00599 (M.D. Fla.); *City of Riviera Beach Police Pension Fund v. Target Corp.*, 2:25-cv-00085 (M.D. Fla.); *State Bd. of Admin. of Fla. v. Target Corp.*, 2:25-cv-00135 (M.D. Fla.).

consistently reject that theory of supposed futility, because it is a Delaware standard, and Minnesota imposes a stricter requirement by statute. Minnesota Statute 302A.241 allows the Board to **delegate** consideration of the demand to an independent Special Litigation Committee ("SLC"), which means it is irrelevant whether the Board itself can disinterestedly consider a demand. *See* Matheson & Garon, 18 Minn. Prac., Corporation Law & Practice §10:3 (3d ed. 2013) ("[I]t is arguable that demand in Minnesota is never futile since someone not implicated in the lawsuit (i.e., one or more outsiders) always can be commissioned to investigate . . . ."). Plaintiff did not make the required demand and he offers no futility argument that Minnesota law recognizes. His derivative claims, and this action, must therefore be dismissed without the Court needing to even consider the merits of Plaintiff's claims. *Infra* I.

But even if the Court were to consider whether Plaintiff has stated a claim, dismissal is independently warranted. Plaintiff asserts two categories of claims: (1) violation of Section 14(a) of the Exchange Act of 1934; and (2) breach of fiduciary duty under Minnesota law. The Section 14(a) claim fails because it cannot be brought derivatively under Minnesota law, which controls as to whether the derivative claim is available at the threshold. *See Nw. Racquet Swim and Health Clubs, Inc. v. Deloitte & Touche*, 535 N.W.2d 612, 619 (Minn. 1995); *infra* II.A.1. And Plaintiff fails to adequately plead any of the requisite elements, which must be pleaded with specificity under the heightened pleading standard in the Private Securities Litigation Reform Act (PSLRA). *See Carpenters' Pens. Fund of Ill. v. Neidorff*, 30 F.4th 777, 786 (8th Cir. 2022); *infra* II.A.2. The remaining Minnesota-law claim is premised on the theory that the Board consciously

failed to monitor internal controls and knowingly issued false statements. That fails to meet the applicable pleading standard, as Plaintiff pleads zero facts in support. *Infra* II.B.

<u>Stay</u>. If the Court does not dismiss this case, it should be stayed at the very least, because to allow it to proceed while parallel securities claims also proceed would prejudice Target. Again, derivative claims belong to a company. In tag-along derivative actions like this one, plaintiffs repackage claims shareholders have asserted in securities litigation against a company, but invert them. They change the status of the company from that of a co-***defendant*** alongside its officers and directors to a ***plaintiff*** pitted against its officers and directors. Courts routinely stay tag-along derivative actions during the pendency of securities litigation to avoid severe prejudice to the company. *See, e.g.*, *In re Wynn Resorts, Ltd. Deriv. Litig.*, 2:18-cv-00293, 2019 WL 1429526, at *2 (D. Nev. Mar. 29, 2019); *infra* III.A.

The same approach is necessary here. Plaintiff purports to represent Target. He seeks to have Target prove that the Individual Defendants made misleading statements with scienter. But Target will defend itself in the securities actions by showing the opposite. Permitting this derivative action to proceed alongside the securities actions would thus force Target to undermine its own defense. Target's interests, judicial economy, and justice all require a stay. *Infra* III.

ARGUMENT[2]

## I.    THE DERIVATIVE ACTIONS MUST BE DISMISSED BECAUSE PLAINTIFF FAILED TO MAKE A DEMAND ON TARGET'S BOARD.

The complaint must be dismissed because Plaintiff has not a made a demand on Target's Board.

Because derivative suits "enforce a ***corporate*** cause of action," the company is entitled to determine if bringing such an action is in its best interests. *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 95-96 (1991). A "precondition for the [derivative] suit" is that "the shareholder demonstrate that the corporation itself had refused to proceed after suitable demand, unless excused by extraordinary conditions." *Id.* (cleaned up). Thus, Rule 23.1 requires shareholders to plead "any effort" to make a demand, or "reasons for . . . not making the effort" with particularity so that courts can assess whether this requirement has been met. Fed. R. Civ. P. 23.1(b). State law bolsters the requirement by requiring dismissal unless it is "plain from the circumstances" that demand is futile. *Winter v. Farmers Educ. & Coop. Union of Am.*, 107 N.W.2d 226, 234 (Minn. 1961).

### A.    Minnesota's SLC Statute Provides a "Road to Redress."

The law of the state of incorporation determines if the demand requirement is satisfied. *Cottrell on behalf of Wal-Mart Stores, Inc. v. Duke*, 829 F.3d 983, 989 (8th Cir.

---

[2] References to "Ex." are to the exhibits to the declaration of Jeffrey P. Justman, executed July 17, 2025. Courts must consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" in addition to the complaint itself. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The exhibits cited herein consist of SEC filings, evidence on which Plaintiff relies, and matters subject to judicial notice. *See In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 889 (8th Cir. 2002). Unless otherwise indicated, citations are omitted, and emphasis is added.

4

2016); *Gomes v. Am. Century Companies, Inc.*, 710 F.3d 811, 815 (8th Cir. 2013).  Target is incorporated in Minnesota.  Compl. ¶2.  Thus, Plaintiff needs to make a demand in accordance with Minnesota law, or state with particularity why, ***under Minnesota law***, demand is excused.  *See Gomes*, 710 F.3d at 815-16.  He has not.

Under Minnesota law, a derivative suit is "an extraordinary remedy" that is available to shareholders only when there "is ***no other road to redress***."  *Winter*, 107 N.W.2d at 233. The demand requirement is "one not lightly to be dispensed with"; demand is excused only "where it is plain from the circumstances that it would be futile."  *Id.* at 233-34.[3]

But showing that demand would be futile is exceedingly difficult under Minnesota law.  That's because Section 302A.241 of the Minnesota Business Corporation Act (the "SLC Statute") permits a board to refer a demand to a "special litigation committee consisting of one or more independent directors or other independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued."  Minn. Stat. §302A.241 subd.1.  Once established, the SLC "is not subject to a board's direction and control" and "thus enable[s] a corporation to dismiss or settle a derivative suit despite a conflict of interest on the part of some or ***all directors***."  *In re UnitedHealth Grp. S'holder Deriv. Litig.*, 754 N.W.2d 544, 550-51 (Minn. 2008); *see also Pemberton*, 412 F. Supp. 3d at 1062.  In other words, the SLC Statute established a "road to redress" for shareholders regardless of whether some—or even all—directors face a risk

---

[3] In *Winter*, demand was held to be futile because the company's board had met just once in the ***six years*** prior, making it "unrealistic to require the same demand for corporate action as would be expected in the case of the ordinary business corporation."  *Id.*  Nothing similar is alleged here.

of liability. *See UnitedHealth*, 754 N.W.2d at 550-51. Indeed, "it is arguable that demand is never futile in Minnesota." *La. Mun. Police Emps. Ret. Sys. v. Finkelstein*, 27-cv-11-23986, 2012 WL 10057353, at *4 (Minn. Dist. Ct. May 29, 2012); *Kococinski v. Collins*, 935 F. Supp. 2d 909, 917 n.13 (D. Minn. 2013) (same); 18 Minn. Prac., §10:3; *see also In re Buca, Inc. Shareholder Deriv. Litig.*, 05-cv-4418, 2005 WL 6750825, at *2 (Minn. Dist. Ct. Nov. 9, 2005) (concluding "[i]t is not inconceivable that even the most rogue board" could appoint an SLC upon receiving a shareholder demand).

## B.  Plaintiff's "Substantial Likelihood of Liability" Excuse Fails.

Plaintiff admits he has not made a demand on Target. Compl. ¶106. Instead, he says it would be futile for him to have made a demand because his claims subject the entire Board to a "substantial likelihood of liability," rendering the Board "incapable of making an independent and disinterested decision to institute and vigorously prosecute the proposed action." *Id.* But the "substantial likelihood of liability" standard is the law of Delaware, not Minnesota. *See United Food & Com. Workers Union v. Zuckerberg*, 262 A.3d 1034, 1048 (Del. 2021).[4] "Delaware and Minnesota law differ with respect to the requirements for demonstrating demand futility." *Medtronic*, 68 F. Supp. 3d at 1062.

---

[4] Even under Delaware law, Plaintiff has failed to plead particularized facts showing that any Defendant, let alone the majority of the Board, faces a substantial likelihood of liability. To plead a substantial likelihood of liability, Plaintiff must "make a threshold showing, through the allegation of particularized facts, that their claims [against each director] have some merit." *In re Trade Desk, Inc. Deriv. Litig.*, 2022-0461-PAF, 2025 WL 503015, at *21 (Del. Ch. Feb. 14, 2025). The complaint fails to do so on each claim. As discussed below, Plaintiff fails to plead any of the requisite elements to establish a Section 14(a) claim. *Infra* II.A.2. Plaintiff's fiduciary duty claim, likewise, fails to any facts demonstrating that any of the Individual Defendants acted disloyally or in bad faith. *Infra* II.B. And, in any event, the Individual Defendants' actions are protected by the

As noted above, the SLC Statute provides shareholders with a road to redress even if some (or all) of the directors face liability.  Thus, the SLC Statute "renders the analysis [of substantial likelihood of liability] unnecessary; ***the only question*** is whether the plaintiff has alleged facts showing that it would be futile to ask the board to appoint an SLC," which "cannot be accomplished simply by pleading the board is conflicted."[5] *Pemberton*, 412 F. Supp. 3d at 1063.  "[T]he board—whether conflicted or not—***must*** be given an opportunity to address the dispute ***before*** the dispute becomes the subject of a derivative action." *Id.*

Indeed, Minnesota courts (state and federal) consistently apply the SLC Statute to dismiss cases that rely on the "substantial likelihood of liability" theory of demand futility. *See, e.g.*, *Pemberton*, 412 F. Supp. 3d at 1062-64; *Gerring Props. v. Gerring*, 27-cv-16-12570, 2017 WL 10662042, at *12 (Minn. Dist. Ct. Nov. 28, 2017); *Kitley v. IsoRay, Inc.*, 16-cv-3297, 2017 WL 4737244, at *6 (D. Minn. Oct. 19, 2017); *Medtronic*, 68 F. Supp. 3d at 1061-62; *Finkelstein*, 2012 WL 10057353, at *4; *Hueler v. Seeland*, 27-cv-11-15606, 2012 WL 7749256, at *8 (Minn. Dist. Ct. Dec. 5, 2012); *Buca*, 2005 WL 6750825, at *2-3.  Plaintiff fails to explain why the Board could not consider appointing an SLC here. Dismissal is thus required.

---

business judgment rule and the outside directors are all exculpated from liability for any duty of care claim.  Infra II.B.2.

[5] Minnesota has not quite "abolish[ed] the doctrine" of demand futility and may still permit futility allegations where the company "was essentially defunct"—like in *Winter*—or where "there is an imminent threat of irreparable injury." *Pemberton*, 412 F. Supp. 3d at 1063-64.  This is not such a case.

## II.    PLAINTIFF HAS NOT STATED ANY VIABLE CLAIM.

Because dismissal is required due to Plaintiff's failure to make a demand, the Court need not consider the substance of Plaintiff's claims.  Should the Court do so, however, dismissal is independently required under Federal Rule of Civil Procedure 12(b)(6).

### A.    The Section 14(a) Claim Fails To Connect Any Misrepresentation to a Cognizable Injury.

Section 14(a) prohibits "solicit[ing] a proxy respecting any registered security" via "any false or misleading statement or omission with respect to a material fact," *Carpenters*, 30 F.4th at 786, to help shareholders make a "fair and informed" vote, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 381, 396 (1970).  Plaintiff claims that Defendants violated Section 14(a) because they allowed Target to issue proxy statements with false or misleading statements.  Compl. ¶116.  This fails as a matter of law because (1) Minnesota law (which governs the availability of derivative claims) does not recognize derivative Section 14(a) claims and (2) even if a Section 14(a) derivative claim were viable under Minnesota law, Plaintiff fails to adequately plead any of the requisite elements.

#### 1.    Plaintiff's Section 14(a) Claim Cannot Be Brought Derivatively Under Minnesota Law.

First, the Section 14(a) claim fails because there is no ***derivative*** claim under Minnesota law related to misleading proxy materials.  A derivative claim must "alleg[e] an injury to the corporate entity."  *In re Medtronic, Inc. S'holder Litig.*, 900 N.W.2d 401, 406 (Minn. 2017).  In contrast, a direct claim "alleges an injury to the shareholder" himself.  *Id.* As with demand futility, "the law of the state or place where a company is incorporated"— here Minnesota—determines "whether the claims asserted . . . are direct or derivative."

*Buckley v. Control Data Corp.*, 923 F.2d 96, 98 (8th Cir. 1991); *Staehr v. W. Cap. Res., Inc.*, 10-cv-1806, 2011 WL 2633894, at *4 (D. Minn. July 6, 2011).[6]

In Minnesota, claims based on allegations that shareholders relied on misrepresentations in deciding how to act belong to the shareholder, not the corporation. *See Nw. Racquet*, 535 N.W.2d at 619. Here, Plaintiff alleges that proxy misstatements "were material to ***Plaintiff*** in voting on the matters set forth ***for stockholder determination***." Compl. ¶116. Under Minnesota law, such a claim cannot be litigated derivatively, requiring dismissal of the Section 14(a) claim. *Nw. Racquet*, 535 N.W.2d at 619; *In re Medtronic, Inc.*, 27-cv-14-11452, 2015 WL 1387937, at *7 (Minn. Dist. Ct. Mar. 20, 2015), *aff'd*, A15-0858, 2016 WL 281237, at *6 (Minn. Ct. App. Jan. 25, 2016), *aff'd in part, rev'd in part on other grounds*, 900 N.W.2d 401 (Minn. 2017).

### 2.    Plaintiff Has Not Adequately Pled a Section 14(a) Violation.

The Section 14(a) claim must also be dismissed because Plaintiff fails to adequately plead any of the requisite elements.

To plead a Section 14(a) violation, Plaintiff must plausibly allege facts showing that "(1) a proxy statement contained a material misrepresentation or omission which (2) caused

---

[6] The Supreme Court previously stated in dicta that a Section 14(a) claim ***can*** be derivative as a matter of federal law. *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964). That is irrelevant because, as the Supreme Court has subsequently clarified, it is the applicable state law (i.e., Minnesota), not federal law, that controls the question of whether a claim can be pursued derivatively. *Freedman v. magicJack Vocaltec Ltd.*, 963 F.3d 1125, 1132-33 (11th Cir. 2020); *see also Lee v. Fisher*, 70 F.4th 1129, 1146-47 (9th Cir. 2023) (explaining how *Borak* incorrectly addressed this as an issue of federal common law but *Kamen*, 500 U.S. at 98-99, subsequently clarified it is an issue of state law). The Supreme Court has also subsequently questioned the reasoning of *Borak* and has repeatedly declined to follow it in other contexts. *See, e.g.*, *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction." *Carpenters*, 30 F.4th at 786. The alleged injury must be the direct result of the voting outcome. *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1102 (1991).

Plaintiff must also satisfy the heightened pleading standard imposed by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which requires him to (i) specify each statement alleged to have been misleading and the reasons or reasons why it is misleading and (ii) state with particularity facts giving rise to a strong inference that the defendant acted with the require state of mind. *Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124 (8th Cir. 2019); *Carpenters*, 30 F.4th at 787. Where claims sound in fraud (as here), plaintiffs must plead a strong inference of scienter as to each defendant. *Little Gem Life Scis. v. Orphan Med.*, 537 F.3d 913, 917 (8th Cir. 2008); *see also California Public Empls.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 160 (3d Cir. 2004). And, regardless of whether Section 14(a) claims sound in fraud, the Eighth Circuit requires that plaintiffs plead scienter of outside director defendants. *SEC v. Shanahan*, 646 F.3d 536, 546-47 (8th Cir. 2011); *Carpenters*, 30 F.4th at 787. The Complaint pleads zero facts in support of any of these required elements.

a.    <u>Plaintiff Fails To Plead Causation.</u>

As a threshold matter, Plaintiff's Section 14(a) claim must be dismissed because he fails to plead that the alleged injuries were the direct result of any voting outcome. *Va. Bankshares*, 501 U.S. at 1102; *Carpenters*, 30 F.4th at 786. Section 14(a) "requires that the votes solicited by a false proxy statement ***directly*** authorize the loss-generating

10

corporate action." *In re Paypal Holdings, Inc. S'holder Deriv. Litig.*, 17-cv-00162, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018); *Hastey ex rel. YRC Worldwide, Inc. v. Welch*, 449 F. Supp. 3d 1053, 1065 (W.D. Kan. 2020). That standard cannot be met by alleging that the proxy authorized the election of directors without which they could not have gone on to commit wrongdoing. *See Abbey v. Control Data Corp.*, 603 F.2d 724, 732 (8th Cir. 1979); *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 797 (11th Cir. 2010); *Gen. Elec. Co. v. Cathcart*, 980 F. 2d 927, 933 (3d Cir. 1992). Here, Plaintiff puts at issue two board elections, Compl. ¶¶6, 116-17, and fails to meet the standard for either.

**2023 Board Vote**. Plaintiff fails to plead any direct link between the vote to elect the directors in 2023 and the alleged damages from backlash to the Pride Collection. Nor can he, as the Collection was released in May 2023, Compl. ¶7, *before* the directors were re-elected in June 2023, *see* Ex. A (2023 Proxy) at 6 (disclosing deadline for shareholder vote deadline was in June 2023). This alone forecloses a Section 14(a) claim as to the 2023 Proxy. *See Va. Bankshares*, 501 U.S. at 1102.

**2022 Board Vote**. Nor does Plaintiff allege that shareholders' votes directly authorized the 2023 Pride Collection, as they did not. Instead, he claims that "shareholders would not have elected the Individual Defendants to the Board if they had been told the truth of the Board's allowing the 2023 Pride Month Campaign and lack of oversight of social and political issues and risks." Compl. ¶95; *accord* 117 (proxies led to "the re-elections of the Individual Defendants, allowing them to breach their fiduciary duties to Target"). But the damages that Plaintiff alleges result from the financial and reputational impact of the backlash to the 2023 Pride Collection, Compl. ¶¶99-100, not the election of

the directors.  Causation cannot be based on an injury stemming from alleged "corporate. . . mismanagement."  *Abbey*, 603 F.2d at 732; *see also Va. Bankshares*, 501 U.S. at 1102.  Again, "the harm to plaintiff-shareholders must have resulted from the corporate transactions which were authorized as a result of the false or misleading proxy solicitations."  *Abbey*, 603 F.2d at 732.  Where shareholders elect directors that are alleged to subsequently engage in misconduct causing injury, those alleged injuries are only ***indirectly*** caused by the proxy vote, and there is no Section 14(a) causation.  *See id.* (allegations about the "corporation's illegal foreign payments stem[] directly" from the Board's mismanagement in authorizing those payments—"not from allegedly misleading proxy solicitations"); *see also Cathcart*, 980 F.2d at 933 ("[T]he mere fact that omissions in proxy materials, by permitting directors win re-election, *indirectly* lead to financial loss through mismanagement will not create a sufficient nexus with the alleged monetary loss." (emphasis in original)).

      b.    <u>Plaintiff Fails To Plead a Material Misstatement of Omission.</u>

Under the heightened standards imposed by the PSLRA, to plead a material misrepresentation under Section 14(a), Plaintiff must also allege factual allegations with specificity "necessarily show[ing] that the defendants' statements were misleading."  *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir. 2005).  This includes the "who, what, when, where and how of the misleading statements or omissions."  *In re 2007 Novastar Fin., Inc. Sec. Litig.*, 579 F.3d 878, 882 (8th Cir. 2009).  Plaintiffs may not rest on mere allegations that fraud has occurred; instead, they "must indicate why the alleged misstatements would have been false or misleading at the several points in time in which

it is alleged they were made." *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 958-59 (8th Cir. 2008).  Nor can the PSLRA's strictures "be satisfied with allegations that defendants made statements and then showing in hindsight that the statement is false." *Elam v. Neidorff*, 544 F.3d 921, 927 (8th Cir. 2008) (quoting *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 743 (8th Cir. 2002)).  Plaintiff does not come close to satisfying that pleading standard here.

Plaintiff takes issue with statements in Target's 2022 and 2023 Proxies describing the allocation of risk oversight responsibility among Target's Board and its committees. Compl. ¶75.  Specifically, Plaintiff alleges that Defendants "did not oversee social and political issues and risks arising from Target's ESG matters."  Compl. ¶75.  He claims that, instead, Defendants oversaw risk only from one side of the political spectrum and sought to "advance ESG and DEI initiatives regardless of the social or political issues or risks Target would face."  *Id.* That fails at the threshold.  By Plaintiff's own admission, ***Target*** could not have been misled on that subject because "***Target knew*** of the known risks with pushing forward with its ESG/DEI initiatives" and "***Target knew*** that the consumer environment was changing with respect to Target's Pride Month campaigns."  *Id.* ¶¶62-63.

Moreover, rather than pleading ***facts*** demonstrating that the Board failed to oversee risk (or only provided one-sided oversight), Plaintiff merely speculates.  He hinges his belief that the Board did not oversee risk solely on the *result* of certain business decisions— i.e., that Target's participation in the "controversial" 2023 Pride Collection "demonstrates the Board's lack of oversight."  Compl. ¶94.  Speculative allegations do not state a claim under the securities laws.  *See In re Target Corp. Sec. Litig.*, 275 F. Supp. 3d 1063, 1074

(D. Minn. 2017) (speculative allegations of "systemic problems" fail to meet the PSLRA's heightened standard), *aff'd*, 955 F.3d 738 (8th Cir. 2020); *Hutchinson*, 536 F.3d at 959 (speculative, anecdotal allegations fail to meet PSLRA's heightened standard). Indeed, the fact that Target released a collection that resulted in backlash does not show that the Board failed ex-ante to *consider* risk associated with that decision. *See id.* (company's decision to change strategic direction at a later point in time did not render previous statements regarding business objectives false)*; In re 3M Co. Sec. Litig.*, 20-cv-2488, 2021 WL 4482987, at *15 (D. Minn. Sept. 30, 2021) (Brasel, J.) (entering into a substantial settlement did not render defendant's previous statements about potential litigation exposure false); *Lee v. Frost*, 21-cv-20885, 2021 WL 3912651, at *11-12 (S.D. Fla. Sept. 1, 2021) (alleging absence of diverse members ex post did not show statements about company's diversity and anti-discrimination policies were false ex ante; showing of actual discrimination was required); *Arora v. HDFC Bank Ltd.*, 671 F. Supp. 3d 305, 314 (E.D.N.Y. 2023) (eventual internal control failure did not show prior statements regarding effectiveness of those controls were false); *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340, 359 (S.D.N.Y. 2015) (similar).[7]

---

[7] Plaintiff also claims that Target knew that the consumer environment was changing with respect to merchandise in support of the LGBTQ+ community, but decided to continue with the Collection anyway. Even accepting Plaintiff's allegations as true, the mere fact that Defendants knew about a risk is not evidence that they were not overseeing it. *See In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 128 (Del. Ch. 2009) (knowledge of signs of current and future deterioration of market did not mean "the board's oversight mechanisms were inadequate"); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 761 (S.D. Tex. 2012) ("[D]emonstrating [] knowledge of risk does not demonstrate that [] statements were false or misleading; Plaintiffs' argument mistakenly equates risk with falsity.").

c.    <u>Plaintiff Fails To Plead a Strong Inference of Scienter.</u>

Plaintiff's Section 14(a) claim also fails because he fails to plead scienter.  As noted above, where claims sound in fraud, the PSLRA's heightened scienter standard applies.  In addition, the Eighth Circuit has held that "'scienter is an element' of 14(a) claims brought 'against outside directors.'"  *Carpenters*, 30 F.4th at 787 (quoting *SEC v. Shanahan*, 646 F.3d 536, 546-47 (8th Cir. 2011)).  Here, **13** of the 14 Individual Defendants are outside directors.[8]

The Complaint repeatedly sets forth a theory of fraud.  *See* Compl. ¶¶35 ("The conduct of the Individual Defendants complained of herein involves a ***knowing and culpable*** violation of their obligations as directors . . . ."), 62 ("Target ***knew*** of the known risks."), 63 ("Target ***knew*** that the consumer environment was changing . . . [h]owever, the Individual Defendants ***recklessly*** pushed forward.").  In an attempt to avoid application of the PSLRA standard, Plaintiff later disclaims fraud-based allegations.  *See* Compl. ¶113 ("specifically disclaim[ing]" reliance upon allegations of fraud, scienter, or recklessness).  But whatever he might do to plead around the standard, the law is clear: Plaintiff *must* plead scienter as to the 13 outside directors under Eighth Circuit law.  *Carpenters*, 30 F.4th at 787.  And, since he has chosen a theory of fraud, he must adequately plead it as to *each and every* Defendant.  *See Little Gem*, 537 F.3d at 917 (applying PSLRA's heightened pleading standard to Section 14(a) claims sounding in fraud); *Chubb*, 394 F.3d at 160 (applying PSLRA's heightened pleading standard to Section 11 claims sounding in fraud

---

[8] As Target's CEO, Brian Cornell is the only inside director.

despite complaint's "disavowment of fraud"); *see also Horizon Asset Mgmt. Inc. v. H&R Block, Inc.*, 580 F.3d 755, 761 (8th Cir. 2009) (plaintiffs must "raise a strong inference of scienter for *each* defendant and with respect to *each* alleged misrepresentation" to meet the PSLRA's heightened pleading standard).

Here, Plaintiff alleges nothing at all with respect to *any* Individual Defendant's knowledge, including the outside directors. The only specific fact that Plaintiff alleges is that "***Target*** knew of the known risks with pushing forward its ESG/DEI initiatives" because "a consumer boycott of the brand Bud Light over its LGBT marketing campaign cost the brand over 25 percent in sales." Compl. ¶62. As a threshold matter, this allegation only describes ***Target's*** alleged knowledge. But Plaintiff seeks to bring claims against the Director Defendants ***on behalf of*** Target. Compl. ¶103.[9] The Complaint alleges nothing at all as to which Individual Defendant knew what and when. That fails the PSLRA's heightened pleading standard. *See U.S. ex rel. Coster v. United States*, 317 F.3d 883, 888-89 (8th Cir. 2003); *In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*, 12-cv-4041, 2015 WL 13375767, at *8 (W.D. Ark. Apr. 3, 2015) ("The Complaint is devoid of particularized facts on a director-by-director basis that would support that these five Director Defendants had knowledge of the alleged misconduct."), *aff'd*, 829 F.3d 983 (8th Cir. 2016).

---

[9] The inclusion of scienter allegations *against* Target is particularly troubling because Plaintiff purports to bring this derivative action ***on behalf of Target*** and has a fiduciary duty to act in Target's best interests. *Infra* III.C; *see also* Compl. ¶105 ("Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in enforcing and prosecuting its rights."). That includes avoiding potential harm to Target in the securities actions, *see Infra* III.

In any event, "the alleged behavior of peer companies . . . does not suffice to plead" scienter. *In re PXRE Sec. Litig.*, 600 F. Supp. 2d 510, 547 n.39 (S.D.N.Y.), *aff'd*, 357 F. App'x 393 (2d Cir. 2009). That ***Bud Light*** experienced backlash does not mean that the Individual Defendants knew ***Target***—which had released an annual LGBTQ+-themed collection for Pride each year for over a decade, Compl. ¶51—would experience significant backlash to the 2023 Pride Collection. To be sure, there was a potential risk of backlash— Target's annual reports *warned* investors of those risks.[10] But mere awareness of backlash risk does not show that Defendants (i) knew that backlash would transpire (and its extent) with respect to the 2023 Pride Collection before it happened or (ii) intended to deceive investors with regard to that backlash before it happened. *See In re Chi. Bd. Options Exch. Volatility Index Manipulation Antitrust Litig.*, 435 F. Supp. 3d 845, 863 (N.D. Ill. 2020) (knowledge that risk exists does not mean defendant knew risk would transpire or was severely reckless), *aff'd sub nom. Barry v. Cboe Glob. Markets, Inc.*, 42 F.4th 619 (7th Cir. 2022); *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 128 (Del. Ch. 2009) (knowledge of signs of current and future deterioration of market did not mean "the board's oversight mechanisms were inadequate").

---

[10] *See* Compl. ¶70 ("[S]takeholder expectations regarding [ESG] matters continue to evolve and are not uniform. We have established, and may continue to establish, various goals and initiatives on these matters, including with respect to diversity, equity, and inclusion topics. . . . Any failure, or perceived failure . . . to otherwise meet evolving and varied stakeholder expectations could adversely affect our reputation and result in legal and regulatory proceedings against us.").

**B.     The Breach of Fiduciary Duty Claim Must Be Dismissed.**

Plaintiff also alleges that the Individual Defendants breached their fiduciary duties. Compl. ¶¶9, 120-28.  This claim is governed by Minnesota law.  *Dunning v. Bush*, 536 F.3d 879, 886 (8th Cir. 2008); *Dietz v. Spangenberg*, 11-cv-2600, 2013 WL 4610530, at *22 n.10 (D. Minn. Aug. 29, 2013).  Plaintiff references in passing a litany of fiduciary duties, but, under Minnesota law, they all are grouped into two categories: loyalty and care.[11]  The Complaint advances two theories of breach, alleging: (1) the "internal controls were not adequately maintained" to alert the Individual Defendants of the alleged misconduct, *id.* ¶126; and (2) the Individual Defendants knowingly issued and failed to correct materially misleading statements, Compl. ¶¶124-25.  Neither supports a claim for breach of the duty of loyalty or duty of care under Minnesota law.

**1.     Plaintiff Fails to State a Duty of Loyalty Claim.**

Plaintiff claims that Defendants breached their duty of loyalty.  Compl. ¶121. "Under Minnesota law, the fiduciary duty of loyalty prohibits directors from serving 'their own personal interests at the expense of the corporation and its stockholders.'"  *Lusk v. Akradi*, 15-cv-1911, 2017 WL 3382301, at *4 (D. Minn. Aug. 6, 2017) (cleaned up) (quoting *Diedrick v. Helm*, 14 N.W.2d 913, 919 (Minn. 1944)).  Minnesota focuses the conflict-of-interest analysis on the board's "material financial interest[s]."  *Lusk*, 2017 WL

---

[11] Plaintiff alleges that "the Individual Defendants violated and breached their fiduciary duties of candor, good faith, loyalty, reasonably inquiry, oversight, and supervision." Compl. ¶122.  In Minnesota, these duties are grouped with the duty of loyalty or duty of care. *See, e.g.*, *Miller v. Miller*, 222 N.W.2d 71, 81 (Minn. 1974) (analyzing loyalty, good faith, and fair dealing together); *Potter v. Pohlad*, 560 N.W.2d 389, 392 (Minn. App. 1997) (analyzing due care in terms of whether fiduciary reasonably informed himself).

3382301, at *6 (quoting Minn. Stat. §302A.255(1)).  Neither Plaintiff's failure-to-monitor theory nor his misstatement theory suggests Defendants were financially conflicted. Indeed, the Complaint contains no allegations at all of any financial conflict between Defendants and Target shareholders.[12]  Plaintiff may not plead other theories under the label of a "duty of loyalty" violation.

At best, Plaintiff attempts to make out a duty of loyalty claim by (1) referring to "stakeholder interests"; (2) arguing the Individual Defendants failed to oversee Target's internal controls; and (3) arguing the Individual Defendants knowingly issued misstatements or omissions.  Each attempt fails.  Consideration of stakeholder interests is permissible under Minnesota law, and the Complaint fails to adequately plead any failure of oversight or knowing misstatement or omission.

***Consideration of Stakeholder Interests Permitted***.  The Complaint contains passing references to the Individual Defendants' consideration of the interests of "nonprofit stakeholder activists and organizations that Target consults in making its ESG and DEI commitments."  *See, e.g.*, Compl. ¶77.  But that cannot form the basis of a duty of loyalty claim in Minnesota.  Minnesota has a constituency statute that expressly permits Minnesota corporations and their directors to consider "the interests of the corporation's employees,

---

[12] The Complaint cannot allege any financial conflict because the Individual Defendants had significant Target holdings.  *See* Ex. B at 34 (2024 Proxy) (3,871-479,377 shares); Ex. A at 33 (2023 Proxy) (2,630-508,848 shares).  That supports dismissal of a loyalty claim because it shows that "the Board's [financial] interest aligned rather than conflicted with shareholders."  *Lusk*, 2017 WL 3382301, at *4-5; *see also Chen v. Howard-Anderson*, 87 A.3d 648, 670-71 (Del. Ch. 2014) (shareholdings create "powerful economic (and psychological) incentives" to act in shareholders' interests).

customers, suppliers, and creditors, the economy of the state and nation, community and societal considerations."  Minn. Stat. §302A.251 subd.5.[13]  Thus, any theory that the Individual Defendants must focus solely on "protect[ing] shareholder interests," Compl. ¶77, is in direct conflict with Minnesota's constituency statute.  And courts have dismissed similar claims for breach of fiduciary duty under the laws of states with constituency statutes nationwide.  *See, e.g.*, *Dixon v. Ladish Co.*, 785 F. Supp. 2d 746, 753 (E.D. Wis. 2011) (applying Wisconsin's constituency statute to dismiss fiduciary-duty claims with prejudice); *Amanda Acquisition Corp. v. Universal Foods Corp.*, 708 F. Supp. 984, 1012-13 (E.D. Wis. 1989), *aff'd*, 877 F.2d 496 (7th Cir. 1989) (same); *Baron v. Strawbridge & Clothier*, 646 F. Supp. 690, 697 (E.D. Pa. 1986) (same).[14]

*No Failure of Oversight*.  The Complaint also advances the theory that "internal controls were not adequately maintained" to alert Defendants to the alleged misconduct. Compl. ¶126; *see also Iron Workers Mid-S. Pension Fund v. Davis*, 13-cv-289, 2013 WL 6858567, at *7 (D. Minn. Dec. 30, 2013) (citing *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006)) (explaining that oversight claims arise from the good faith requirement in the duty of loyalty).  Commonly known as a *Caremark* claim, this theory has been described as

---

[13] These constituency statutes permit "the board . . . to consider interests other than those of the shareholders" as well as "factors other than maximizing shareholders' short-term profit."  Aaron Rachelson, *Corporate Acquisitions, Mergers, and Divestitures* §8:54 (2025).  The majority of states have adopted constituency statutes.  *Id.* §8:58.

[14] Other states with constituency statutes have similarly rejected fiduciary duty claims premised on consideration of non-shareholder interests.  *See Gut v. MacDonough*, 2007-1083-C, 2007 WL 2410131, at *14 (Mass. Super. Aug. 14, 2007); *In re Glob. Serv. Grp.*, 316 B.R. 451, 460 & n.7 (Bankr. S.D.N.Y. 2004); *Abrahamson v. Waddell*, 624 N.E.2d 1118, 1120 (Ohio Com. Pl. 1992).

"possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Stone*, 911 A.2d at 372.  In the nearly 30 years since the Delaware Court of Chancery's *Caremark* decision, *In re Caremark Int'l Derivative Litig.*, 698 A.2d 959 (Del. Ch. 1996), no Minnesota court has found liability based on this theory, *see Lusk*, 2017 WL 3382301, at *5 (noting difficulty pursuing this theory because it depends on the plaintiff showing "a sustained or systematic failure of the board to exercise oversight" and "a showing that the directors were conscious of the fact that they were not doing their jobs").

To plead a *Caremark* claim, the Complaint must allege particularized facts showing either that "(1) the directors utterly failed to implement any reporting or information system or controls; or (2) having implemented such a system or controls, [they] consciously failed to monitor or oversee its operations thus disabling themselves from being informed of risks or problems requiring their attention." *Iron Workers Mid-S. Pension Fund v. Davis*, 93 F. Supp. 3d 1092, 1098 (D. Minn. 2015) (cleaned up) (quoting *Stone*, 911 A.2d at 370).  The Complaint alleges neither.  It does not allege that the Board failed to implement any reporting or information system.  To the contrary, it acknowledges that Target implemented oversight mechanisms within its Government & Sustainability Committee and Audit & Risk Committee.  Compl. ¶¶38-42.  The Complaint also fails to allege any specific facts showing that the Board consciously failed to monitor its operations.

First, there is no allegation that any Individual Defendant **knowingly** or **consciously** disregarded Target's internal controls.  The Complaint disclaims reliance "on any allegation of reckless or knowing conduct" to support its securities claim.  Compl. ¶113.

21

And the only scienter allegations even remotely directed at Defendants' alleged failure to monitor are conclusory. *See, e.g.*, Compl. ¶¶ 35 ("The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations"); 123 ("Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties"); 126 (alleged failure to monitor "was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of the Company's securities"). The ***only*** non-conclusory allegation of scienter is the allegation that "Target knew of the known risks with pushing forward with its ESG/DEI initiatives but wrote them off" because there was "a consumer boycott of the brand Bud Light over its LGBT marketing campaign." *Id.* ¶25. As discussed, this allegation fails for many reasons.[15] *See supra* II.A.2. As relevant here, it cannot support Plaintiff's oversight claim because alleged awareness of issues "in the broader economy" does not imply Individual Defendants "knew that there were material weaknesses in [the company]'s internal controls" or consciously failed to oversee those internal controls, as a matter of law. *Iron Workers*, 93 F. Supp. 3d at 1099-1100 (cleaned up).

Second, Plaintiff pleads zero facts showing any failure to monitor at all. The Complaint simply leaps from allegations that Target experienced backlash, *see id.* ¶¶79-91, to the conclusion that "[t]he 2023 Pride Month Campaign was so controversial to Target's core customer base that no reasonable Board oversight of social and political issues and

---

[15] Among other issues, this allegation pleads scienter for ***Target*** (which is the real plaintiff in interest), rather than any Individual Defendant. And it does not follow that just because Bud Light experienced backlash that any Individual Defendant knew Target would experience backlash as well. *See supra* II.A.2.

risks of ESG matters would have permitted it to go forward," *id.* ¶94. In other words, Plaintiff alleges "the fact that Target participated in the controversial 2023 Pride Month Campaign demonstrates the Board's lack of oversight of social and political issues and risks." *Id.* But this argues breach of fiduciary duty by hindsight. Just because Target experienced backlash doesn't mean Defendants failed to monitor internal controls. This theory incorrectly assumes corporate fiduciaries can never misjudge. If adopted, it would effectively subject **any** board to liability **any time** the company misfires or experiences backlash based on the contention that adequate monitoring would have prevented those issues. That's not the law in any jurisdiction. *See, e.g., Simeone v. Walt Disney Co.*, 302 A.3d 956, 972 (Del. Ch.) (rejecting challenge to Disney's opposition to Florida's "Don't Say Gay" law because it is not the court's place to second guess a board's judgment in balancing how to "avoid political blowback" against harm to other interests like "corporate culture and employee morale")*; Nat'l Ctr. for Pub. Pol'y Rsch. v. Schultz*, 2:22-cv-00267, 2023 WL 5945958, at *3 (E.D. Wash. Sept. 11, 2023) (same for derivative challenge to Starbucks' DEI policies, even if "subsequent events may have cast doubt on the board's determination"); *Matter of Bear Stearns Litig.*, 23 Misc. 3d 447, 473 (N.Y. Sup. Ct. Dec. 4, 2008) (fiduciary duty claim cannot be premised solely on the allegation that the board "misjudged" its course and "could have achieved a better result").

    ***No Knowing Misstatement or Omission***. Finally, the Complaint claims that "Individual Defendants had actual or constructive knowledge that the Company issued materially false and misleading statements, and they failed to correct the Company's public statements." Compl. ¶125. This fails for the same reasons Plaintiff's securities fraud claim

fails.  *See supra* II.A.  Plaintiff cannot establish "actual or constructive knowledge" because the Complaint concedes that its allegations concerning the purported misstatements or omissions "are not based on any allegation of reckless or knowing conduct by or on behalf of the Individual Defendants."  Compl. ¶113.

Regardless, Plaintiff has also failed to plead any misstatement or omission. Individual Defendants did not misstate or omit "the risk of customer boycotts from its ESG, DEI, and LGBT initiatives."  *Id.* ¶6.  In fact, Target's disclosures warned of those risks. Plaintiff claims the 2022 Annual Report (filed March 8, 2023) warned only of risks to Target if it "failed to 'achieve' its ESG and DEI mandates."  *Id.* ¶70.[16]  But that claim flies in the face of the very language the Complaint quotes, which makes clear that Target faced risk not just from failing "to achieve [its ESG] goals and initiatives" but also from failing "to otherwise meet evolving and varied stakeholder expectations."  *Id.*  That warning addressed the risks inherent in the very sort of "changing" "consumer environment" that Plaintiff pleads existed in the spring of 2023 with respect to "LGBT marketing campaign[s]."  *Id.* ¶¶62-63.  The 2021 Annual Report further warned that a failure to meet such changes in consumer or other stakeholder expectations could lead to consumer boycotts.  Ex. C at 7 (2021 Annual Report) (warning of potential boycotts); Ex. D at 8 (2022 Annual Report) (same); Ex. A at 73 (2023 Proxy) (incorporating 2022 Annual Report).  The risk was fully disclosed.

---

[16] By contrasting the 2022 risk disclosures against those in 2021, Plaintiff actually admits the adequacy of the 2021 disclosures.  *See id.* ("Unlike the 2021 10-K, however, the 2022 10-K did not address the risk of ESG or DEI in its discussion of reputational risks that could lead to 'consumer boycotts.'").

The Individual Defendants did not misstate or omit any alleged failure to "oversee social and political risks" either.  Compl. ¶75; *see also id.* ¶¶76-77.  As discussed, Plaintiff pleads no facts showing Defendants in fact failed to oversee Target's internal controls. *Supra* II.B.1.

Thus, nothing in the Complaint supports a duty of loyalty violation.

### 2.    **Plaintiff Fails to State a Duty of Care Claim.**

Plaintiff's duty of care claim fails for two independent reasons.

***Exculpation.***  The Board is immune from any duty of care claim.  If a Minnesota corporation's charter includes an exculpatory clause, directors "will not be liable for breaches of fiduciary duty unless they breach the duty of loyalty, act in bad faith, engage in intentional misconduct, or commit a knowing violation of law."  *Kococinski*, 935 F. Supp. 2d at 917 (citing Minn. Stat. §302A.251(4)); *In re Verso Techs., Inc.*, 09-cv-1293, 2010 WL 11598054, at *16-17 (N.D. Ga. June 30, 2010) (applying Minnesota law to dismiss duty of care claim as exculpated).  Target's charter includes an exculpatory clause. Ex. E art.IV.[17]  And, as set forth above, the Complaint fails to adequately allege a breach of the duty of loyalty, bad faith, or any knowing or intentional misconduct or violation of law.  *Supra* II.A, II.B.1.

***Business Judgment.***  Additionally, the Individual Defendants are protected by the business judgment rule.  A breach of the duty of care requires "duty, breach, causation, and

---

[17] The Court may take judicial notice of Target's articles of incorporation. *Bakhaty v. CHI St. Vincent Hot Springs*, 24-cv-00757, 2025 WL 1568838, at *6 (E.D. Ark. June 3, 2025); *Benson v. Harpstead*, 22-cv-1601, 2023 WL 4936733, at *2 n.5 (D. Minn. June 29, 2023) ("The Court may take judicial notice of public records.").

damages." *TCI Bus. Cap. v. Five Star Am. Die Casting*, 890 N.W.2d 423, 434 (Minn. App. 2017). Under the business judgment rule, there is no breach of due care so long as Defendants were "disinterested" and "made an informed business decision, in good faith." *UnitedHealth*, 754 N.W.2d at 551; *Holdahl v. Bioergonomics*, 27-cv-10-24236, 2012 WL 3061774, at *9 (Minn. Dist. Ct. Feb. 8, 2012), *aff'd*, A12-1495, 2013 WL 401885 (Minn. Ct. App. Feb. 4, 2012). There are no allegations of interestedness on the part of any Individual Defendant. And as discussed, Plaintiff fails to plead any bad faith or knowing or intentional misconduct. *Supra* II.A, II.B.1. Thus, the business judgment rule requires dismissal of the duty of care claim as to all Defendants.

Because Plaintiff has failed to state either a duty of loyalty or duty of care claim, Plaintiff's breach of fiduciary duty claim must be dismissed.

## III. THE DERIVATIVE ACTIONS SHOULD BE STAYED DURING THE PENDENCY OF THE SECURITIES ACTIONS.

Alternatively, this Court should grant Defendants' unopposed motion to stay this case during the pendency of the Securities Actions to avoid putting Target in the impossible position of seeking to prove its own liability, while defending itself against the same liability. If they don't dismiss the cases outright, district courts routinely exercise their broad discretion to stay tag-along derivative actions in such circumstances. *See infra* III.A (collecting cases).

In deciding whether to stay, courts consider: (1) the stay's "impact on judicial resources"; (1) the "hardship and inequity to the moving party" if the stay is not granted;

and (3) "prejudice to the non-moving party." *Silverado Park Ass'n v. Country Mut. Ins. Co.*, 742 F. Supp. 3d 910, 918 (D. Minn. 2024). Each factor weighs in favor of a stay.

## A.    A Stay Is Necessary To Avoid Prejudice to Target.

Target will suffer prejudice absent a stay. Without a stay, Target will defend the Individual Defendants' credibility in the securities actions, only to turn around and undermine it here. *Sellers v. Lawson*, 08-cv-60374, 2009 WL 10698793, at *2-3 (S.D. Fla. Mar. 30, 2009); *Breault v. Folino*, 8:01-cv-0826, 2002 WL 31974381, at *2 (C.D. Cal. Mar. 15, 2002); *Wynn*, 2019 WL 1429526, at *2.[18]

More specifically, the theory of liability in the securities actions is that Target, through the Individual Defendants, intentionally misled investors by misstating the risk of backlash to its 2023 Pride collection and the oversight of that risk. *See infra* n.19. Target's defense in those actions hinges on showing that the Individual Defendants, whose liability the securities plaintiffs seek to impute to Target, did not make the alleged misstatements or did not do so with scienter. *See Wynn*, 2019 WL 1429526, at *2 (staying tag-along to avoid "undermin[ing] [company's] defense of the securities" action) (citing *Rosenblum v. Sharer*, 07-cv-6140, 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008)).

Plaintiff's theory in this action is that the same Individual Defendants made the same allegedly false statements with the same scienter.[19] But, Target "is the real plaintiff in

---

[18] In addition to the prejudice to Target, it is also "not practical for two actors—[the derivative plaintiff] and [the Company's] board—to pursue divergent strategies in two simultaneous actions on behalf of the same entity." *Brenner v. Albrecht*, 6514-VCP, 2012 WL 252286, at *5-6 (Del. Ch. Jan. 27, 2012); *accord Breault*, 2002 WL 31974381, at *2.

[19] *Compare* Compl. ¶¶6-7, 70, 94, 125 (the Individual Defendants "failed to ascertain and disclose" the risk of backlash against Target's "ESG, DEI, and LGBT initiatives" and that

[this] derivative suit," not a co-defendant. *Ward v. El Rancho Manana, Inc.*, 945 N.W.2d

439, 447 (Minn. App. 2020) (citing *Ross v. Bernhard*, 396 U.S. 531, 538 (1970)).[20]  Thus,

without a stay, Plaintiff would seek to have Target prove the same conduct that would make

it liable in the securities actions. *Wynn*, 2019 WL 1429526, at *2.[21]  This would be even

more troubling because the Complaint alleges ***Target***, not the Individual Defendants, acted

with scienter. *Supra* II.A.2.c.  Given the severe prejudice to the corporation absent a stay,

courts routinely stay tag-along derivative actions pending resolution of parallel securities

actions, even when plaintiffs oppose a stay. *See, e.g.*, *Sellers*, 2009 WL 10698793, at *2-

3; *Yu v. Frost*, 18-cv-24060, 2019 WL 5225059, at *1 (S.D. Fla. Aug. 1, 2019); *Wynn*,

2019 WL 1429526, at *2, *4; *STEC*, 2012 WL 8978155, at *5-6, *9; *Ormat*, 2011 WL

3841089, at *4-5, *9; *Breault*, 2002 WL 31974381, at *2; *Rosenblum*, 2008 WL 9396534,

at *8; *In re First Solar Deriv. Litig.*, 12-cv-00769, 2012 WL 6570914, at *2 (D. Ariz. Dec.

17, 2012); *see also McDonald v. Abizaid*, 17-cv-907, 2018 WL 692006, at *2 (N.D. Ohio

Feb. 2, 2018).

---

the Board lacked "oversight of social and political issues and risks"), *with Craig*, 2:23-cv-
00599, ECF No. 52 ¶¶16-20, 399-427 (Target and the Individual Defendants failed to
disclose that "Target was subject to backlash from consumers because of its ESG/DEI
mandates and the upcoming [2023] LGBT campaign" and misrepresented Target's "risk-
oversight"); *State Bd. of Admin. of Fla.*, 2:25-cv-00135, ECF No. 1 ¶¶17-21, 404-32
(same); *Riviera*, 2:25-cv-00085, ECF No. 1 ¶¶2-5, 108-17 (similar).

[20] As explained, Minnesota law applies to the derivative claims here. *Supra* I, II.B.

[21] Not only would Target be forced to take conflicting positions, but litigating this action
will "divert [Target's] financial and management resources from the" Securities Actions.
*In re Ormat Techs., Inc.*, 3:10-cv-00177, 2011 WL 3841089, at *4 (D. Nev. Aug. 29, 2011)
(quoting *Breault*, 2002 WL 31974381, at *2); *see also In re STEC, Inc. Deriv. Litig.*, 10-
cv-00667, 2012 WL 8978155, at *6 (C.D. Cal. Jan. 11, 2012) (diversion of resources
"weigh[s] in favor of granting a stay"); *accord Sellers*, 2009 WL 10698793, at *2.

**B.      A Stay Would Streamline the Issues and Promote Judicial Economy.**

A stay is also warranted because resolving the securities litigation first will simplify

this case considerably.  Courts regularly stay derivative actions that "tell the same story"

and identify harm "perpetrated by the same actors" as the related securities action.  *In re*

*Tupperware Brands Corp. S'holder Deriv. Litig.*, 6:20-cv-908, 2020 WL 14032216, at *2-

3 (M.D. Fla. Oct. 28, 2020) (staying derivative claims based on "virtually identical" facts,

conduct, and defendants as securities action); *see also First Solar*, 2012 WL 6570914, at

*2 (similar for "same public statements and disclosures"); *Wynn Resorts*, 2019 WL

1429526, at *3 (similar).  That is the case here.  *Supra* III.A n.18.  A stay will reduce the

burden of litigation on both the Court and the parties by avoiding "duplicative and

conflicting proceedings."  *Sellers*, 2009 WL 10698793, at *3; *Wynn Resorts*, 2019 WL

1429526, at *3; *First Solar*, 2012 WL 6570914, at *2.  That also safeguards against the

risk of "[t]wo juries, considering the same evidence" and "reach[ing] opposite or

conflicting results."  *STEC*, 2012 WL 8978155, at *8.

**C.      Plaintiff Does Not Oppose A Stay.**

Finally, Plaintiff does not oppose Defendants' motion to stay.  In fact, a stay is

consistent with Plaintiff's fiduciary "duty to act in the company's best interest."  *Wynn*

*Resorts*, 2019 WL 1429526, at *2; *STEC*, 2012 WL 8978155, at *4; *accord Breault*, 2002

WL 31974381, at *1.  And a stay is also in Plaintiff's interests because he seeks Target's

defense costs in the securities actions as damages.  Compl. ¶99, Prayer for Relief.  Thus,

litigation of those actions will "materially affect Plaintiff's damages."  *Yu*, 2019 WL

5225059, at *1.  If Target is not found liable in those actions, Plaintiff would be "spared the expense of pursuing doomed claims."  *Wynn*, 2019 WL 1429526, at *3.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to dismiss or, in the alternative, their unopposed motion to stay the action.

Respectfully submitted,                                  Date:  July 17, 2025

/s/ Jeffrey P. Justman
Jeffrey P. Justman                                       Sandra C. Goldstein, P.C. (*pro hac vice*
MN Bar No. 0390413                                       *pending*)
FAEGRE DRINKER BIDDLE &                                  Alexander J. Rodney (*pro hac vice*
REATH LLP                                                *pending*)
2200 Wells Fargo Center                                  Jacob M. Rae (*pro hac vice pending*)
90 South 7th Street                                      Ashley P. Grolig (*pro hac vice pending*)
Minneapolis, MN 55402                                    KIRKLAND & ELLIS LLP
Telephone: (612) 766-7000                                601 Lexington Avenue
jeff.justman@faegredrinker.com                           New York, NY 10022
                                                         Telephone: (212) 446-4779
                                                         sandra.goldstein@kirkland.com
                                                         alexander.rodney@kirkland.com
                                                         jacob.rae@kirkland.com
                                                         ashley.grolig@kirkland.com

                                                         *Attorneys for Individual Defendants and
                                                          Nominal Defendant*