# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| ANDREW RANACIS, Derivatively on Behalf of TARGET CORPORATION, | |
| *Plaintiff*, | Case No. 0:25-cv-02743-NEB-SGE |
| v. | |
| BRIAN C. CORNELL, DAVID P. ABNEY, DOUGLAS M. BAKER, JR., GEORGE S. BARRETT, GAIL K. BOUDREAUX, ROBERT L. EDWARDS, DONALD R. KNAUSS, CHRISTINE A. LEAHY, MONICA C. LOZANO, GRACE PUMA, DERICA W. RICE, DIMITRI L. STOCKTON, MELANIE L. HEALEY, and MARY E. MINNICK, | |
| *Individual Defendants*, | |
| -and- | |
| TARGET CORPORATION, | |
| *Nominal Defendant*. | |

# TARGET AND DEFENDANTS' OPPOSITION TO
## PLAINTIFF'S MOTION FOR VOLUNTARY DISMISSAL

## CONTENTS

INTRODUCTION ................................................................................... 1

FACTUAL BACKGROUND ................................................................. 3

ARGUMENT ......................................................................................... 7

I.    VOLUNTARY DISMISSAL WITHOUT PREJUDICE AS TO DEMAND
      FUTILITY WOULD BE IMPROPER. ............................................. 7

      A.    Plaintiff's Reason for Seeking Dismissal Without Prejudice as to
            Demand Futility Is Improper. ................................................. 8

            1.    Seeking To Avoid an Imminent Adverse Decision Is Improper.
                  ............................................................................................ 9

            2.    Forum Shopping Is Improper. ............................................ 9

            3.    Plaintiff's Stated Justifications Fail ................................. 12

      B.    Dismissal Without Prejudice as to Demand Futility Would Prejudice
            Target and the Individual Defendants. ................................. 13

            1.    Endless Re-Litigation of Demand Futility Is Prejudicial. ............... 14

            2.    Misrepresentation of Minnesota Futility Law Is Prejudicial. .......... 14

            3.    Supplanting Minnesota Law on Internal Affairs Is Prejudicial. ...... 15

            4.    Plaintiff's Conclusory Statement to the Contrary Fails. ................. 16

      C.    Dismissal Without Prejudice as to Demand Futility Would Be a
            Misuse of Judicial Resources. ............................................. 17

II.   THE COURT SHOULD DENY PLAINTIFF'S MOTION AND RESUME
      THE SCHEDULE ON DEFENDANTS' MOTION TO DISMISS. ...................... 20

CONCLUSION .................................................................................. 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbey v. Control Data Corp.*,
603 F.2d 724 (8th Cir. 1979) ..................................................................... 20

*Catibayan v. Fischer Engineering & Maintenance Co.*,
No. 14060, 1997 WL 666969 (Del. Ch. Oct. 17, 1997) ............................... 14

*Clinard v. Wash. Reg'l Med. Ctr.*,
No. 5:20-cv-05188, 2021 WL 4776694 (W.D. Ark. Oct. 13, 2021) ........................ 14

*CTS Corp. v. Dynamics Corp.*,
481 U.S. 69 (1987) ................................................................................. 11, 15

*Daily Income Fund v. Fox*,
464 U.S. 523 (1984) ..................................................................................... 13

*Donner v. Alcoa, Inc.*,
709 F.3d 694 (8th Cir. 2013) ..................................................................... 20

*Gomes v. Am. Century Cos., Inc.*,
710 F.3d 811 (8th Cir. 2013) ..................................................................... 11

*Graham v. Mentor Worldwide, LLC*,
998 F.3d 800 (8th Cir. 2021) ..................................................................... 1, 9

*Hamm v. Rhone-Poulenc Rorer Pharms.*,
187 F.3d 941 (8th Cir. 1999) .............................................................. 8, 10, 17

*Home Owners' Loan Corp. v. Huffman*,
134 F.2d 314 (8th Cir. 1943) .............................................................. 12, 15

*Int'l Shoe v. Cool*,
154 F.2d 778 (8th Cir. 1946) ................................................................. 8, 14

*Jaramillo v. Burkhart*,
59 F.3d 78 (8th Cir. 1995) ....................................................................... 20

*Kennedy v. State Farm Mut. Auto. Ins.*,
46 F.R.D. 12 (E.D. Ark. 1969) .............................................................. 10, 15

ii

*Kern v. TXO Prod.*,
   738 F.2d 968 (8th Cir. 1984) ................................................................. 8, 13

*Kococinski v. Collins*,
   935 F. Supp. 2d 909 (D. Minn. 2013) ........................................................ 11

*Koster v. Am. Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947) ................................................................... 7, 10, 13

*La. Munic. Police Emps. Ret. Sys. v. Finkelstein*,
   No. 27-cv-11-23986, 2012 WL 10057353 (Minn. Dist. Ct. May 29,
   2012) ............................................................................... 10, 11

*Lamb v. XTO Energy, Inc.*
   No. 4:13-cv-1025-L, 2014 WL 4815915 (N.D Tex. Sept. 29, 2014) ...................... 17

*Loc. 682 Health & Welfare Tr. Fund v. Power Hauling*,
   No. 4:08-cv-01131-ERW, 2009 WL 3242137 (E.D. Mo. Oct. 5, 2009) .................... 19

*In re Medtronic Deriv Litig.*,
   68 F. Supp. 3d 1054 (D. Minn. 2014) ..................................................... 6, 10

*In re Medtronic, Inc. S'holder Litig.*,
   900 N.W.2d 401 (Minn. 2017) ................................................................... 7

*Mehle v. Trinity Highway Prods.*,
   131 F. Supp. 3d 857 (D. Minn. 2015) ..................................................... 10, 12

*Meimaris v. Hudner*,
   No. 94-cv-7082-JSM, 1995 WL 413164 (S.D.N.Y. July 12, 1995) ...................... 16

*Millsap by Millsap v. Jane Lamb Mem'l Hosp.*,
   111 F.R.D. 481 (S.D. Iowa 1986) ........................................................... 14

*Morrow v. U.S.*,
   No. 21-cv-1003-MAR, 2021 WL 4347682 (N.D. Iowa July 28, 2021) ...................... 9

*Murray v. Marchbanks*,
   No. 4:16-cv-198-SNLJ, 2017 WL 2964015 (E.D. Mo. June 19, 2017) ...................... 9

*Nat'l Ctr. for Pub. Pol'y Rsch. v. Schultz*,
   No. 2:22-cv-00267-SAB, 2023 WL 5945958 (E.D. Wash. Sept. 11,
   2023) ............................................................................... 16

*Olson v. Skateville, Inc.*,
    No. 19-cv-352-DWF-TNL, 2021 WL 1648769 (D. Minn. Mar. 30,
    2021) .................................................................................................................. 18

*In re Oracle Deriv. Litig.*,
    808 A.2d 1206 (Del. Ch. 2002) ..................................................... 11, 15, 20

*Papilsky v. Berndt*,
    466 F.2d 251 (2d Cir. 1972) ...................................................................... 21

*Paulucci v. City of Duluth*,
    826 F.2d 780 (8th Cir. 1987) ..................................................................... 12

*Pillsbury v. Honeywell*,
    191 N.W.2d 406 (Minn. 1971) ................................................................... 15

*Schoon v. Smith*,
    953 A.2d 196 (Del. 2008) .......................................................................... 13

*Simeone v. Walt Disney Co.*,
    302 A.3d 956 (Del. Ch. 2023) ................................................................... 16

*Thatcher v. Hanover Ins. Grp., Inc.*,
    659 F.3d 1212 (8th Cir. 2011) ........................................................... 1, 8, 17

*Tikkanen v. Citibank*,
    801 F. Supp. 270 (D. Minn. 1992) ............................................................... 8

*Tillman v. BNSF Ry. Co.*,
    33 F.4th 1024 (8th Cir. 2022) ...................................................................... 8

*In re Walt Disney Co. Deriv. Litig.*,
    C.A. No. 15452, 1997 WL 118402 (Del. Ch. Mar. 13, 1997) ............................. *passim*

*Williams v. Ford Motor Credit Co.*,
    627 F.2d 158 (8th Cir. 1980) ..................................................................... 12

*Wingo v. State Farm Fire & Cas. Co.*,
    No. 13-cv-3097-S-FJG, 2013 WL 4041477 (W.D. Mo. Aug. 8, 2013) ................ 18, 20

**Statutes**

Minn. Stat. §302A.251 subd. 5 .................................................................. 2, 6, 11

iv

**Rules**

Fed. R. Civ. P. 23.1.................................................................*passim*

Fed. R. Civ. P. 41(a) ..............................................................*passim*

**Other Authorities**

Wright & Miller, *Fed. Prac. & Proc.* § 1839................................................. 13, 21

## INTRODUCTION

Plaintiff purports to represent Target in this shareholder derivative action, but admits he failed to issue a pre-suit "demand" to Target's board. As Defendants' pending motion to dismiss makes clear, that is fatal under Minnesota law, requiring dismissal. Plaintiff agrees. Several weeks ago, faced with certain dismissal on this issue after reading Defendants' motion to dismiss, Plaintiff informed Defendants he intended to dismiss his complaint to make a demand. The parties agreed that Plaintiff's voluntary dismissal would be *with prejudice* as to the demand issue, but *without prejudice* as to all other issues.

That did not sit well with another set of plaintiffs. Those plaintiffs also purport to represent Target in a virtually identical derivative action in the Middle District of Florida and also failed to issue a demand. To avoid an adverse judgment from this Court on that gating issue of Minnesota law, the Florida derivative plaintiffs pressured Plaintiff here to back out of the original agreement and file the instant motion seeking voluntary dismissal *without prejudice* on all issues.

The Eighth Circuit does not tolerate voluntary dismissal to avoid an imminent adverse decision or to forum shop, especially where it would prejudice defendants. *See Graham v. Mentor Worldwide, LLC*, 998 F.3d 800 (8th Cir. 2021) (no avoidance of imminent adverse decision); *Thatcher v. Hanover Ins. Grp., Inc.*, 659 F.3d 1212, 1213 (8th Cir. 2011) (no forum shopping). To ensure equity and Target's interests are being served, Rule 23.1 provides that "[a] derivative action may be . . . voluntary dismissed . . . only with the court's approval." Fed. R. Civ. P. 23.1(c). Courts thus analyze the voluntary dismissal

of a derivative action under Rule 41(a)(2), which permits a plaintiff to dismiss only "on terms that the court considers proper."  Fed. R. Civ P. 41(a)(2).

Here, Plaintiff's reason for dismissal is plainly improper and the prejudice to Target and the Individual Defendants is particularly acute.  Plaintiff seeks dismissal to permit the Florida derivative plaintiffs to litigate the issue of demand futility in a forum that is unfamiliar with Minnesota law.  Worse still, the Florida derivative plaintiffs have already misstated Minnesota law on demand futility to the Florida court, contending (contrary to over a decade of Minnesota law) that it is the same as Delaware's.  And they have admitted that their purpose is to supplant Minnesota's interest in regulating its resident corporations like Target with that of "Florida . . . as a nationwide leader in actively opposing DEI." *In re Target S'holder Deriv. Litig.*, No. 2:25-cv-00021-JLB-KCD (M.D. Fla.), ECF No. 56 ("Fla. Transfer Opp."), at 19.  But that political reason is contrary not only to Target's best interests, but also to Minnesota law, which expressly permits Minnesota fiduciaries to weigh "societal considerations" like DEI, *see* Minn. Stat. §302A.251 subd. 5.

Moreover, Plaintiff's request for a without-prejudice dismissal on demand futility would also misuse the resources of Minnesota courts, including this Court and Minnesota state courts.  By asking the Court to dismiss the case without prejudice even as to demand futility, Plaintiff is asking the Court for permission to have him, or some other shareholder, file the same lawsuit under the same theory in this Court or another Minnesota court again in the future, making the same arguments that he need not have made a demand on Target's board.  Having invoked Minnesota's judicial process to address whether demand would (or would not) be futile, and having conceded that he is on the wrong side of that issue, Plaintiff

2

should be allowed to voluntarily dismiss only if the dismissal is *with* prejudice as to demand futility. That is the only sensible result that would prevent forum shopping and protect this Court and/or other state judges from being faced with serial lawsuits on the same issue.

Because Plaintiff's justification for dismissal is improper and given the undue prejudice a dismissal *without prejudice* would cause Target, Defendants, and Minnesota's judicial resources, the Court should deny Plaintiff's motion and resume the briefing schedule on Defendants' motion to dismiss. In the alternative, the Court should hold Plaintiff to his original position and dismiss *with prejudice* as to the demand issue, requiring Plaintiff to provide notice of the same.

## FACTUAL BACKGROUND

On July 1, 2025, Plaintiff filed this derivative action, asserting a theory of demand futility and claims for violations of federal securities laws and breach of fiduciary duty in connection with Target's Pride collection. ECF No. 1 at 2, 26.

**Defendants moved for dismissal, raising Plaintiff's failure to make a demand**. Two weeks later, on July 17, 2025, Defendants promptly moved to dismiss, ECF No. 33, arguing, among other things, that Plaintiff has not satisfied Minnesota's pre-suit demand requirement, ECF No. 35 ("MTD") at 4-7. That is, Minnesota law is crystal clear that Plaintiff cannot bring suit before making a demand on Target's board to initiate this action, and that Plaintiff's sole excuse—that demand would be futile because Target's board faces a substantial likelihood of liability—fails as a matter of law. *Id.* The following week, on July 21, 2021, Plaintiff requested an extension of time to respond to the motion to dismiss, which Defendants consented to and which the Court approved. ECF No. 48.

3

**Plaintiff conceded that dismissal with prejudice as to demand futility was appropriate**. Several weeks later, on August 5, Plaintiff's counsel informed Defense counsel that they agreed with Defendants' position on demand futility under Minnesota law in Defendants' motion to dismiss and that Plaintiff intended to voluntarily dismiss his complaint to make a demand on Target's Board of Directors. Ex. C.[1] Defendants consented to dismissal without prejudice as to the merits of Plaintiff's claims, but explained that dismissal must be *with prejudice* as to the demand issue, particularly given Plaintiff's concession that he must make a demand on Target's board. *Id.* Plaintiff stated they "are fine that with approach" and attached a draft order reflecting Plaintiff's position that dismissal as to demand futility would be *with prejudice*. Ex. C.

**Florida derivative plaintiffs caused Plaintiff to back-track**. Meanwhile, another set of derivative plaintiffs also purporting to represent Target were working to thwart that sensible and just result. Those derivative plaintiffs had filed a substantially similar derivative action in the Middle District of Florida proceeding under the same theory of demand futility. *In re Target S'holder Deriv. Litig.*, 25-cv-00021 (M.D. Fla.). On August 8, 2025, they informed Defendants that they would seek to intervene in this action and request, among other things, "dismissal of the MN [Minnesota] action without prejudice." Ex. B.[2] Instead of seeking intervention, however, it appears they took a different tack.

---

[1] "Ex." refers to the exhibits attached to the Declaration of Alexander J. Rodney filed herewith.

[2] The Florida derivative plaintiffs also stated that they would alternatively seek a stay of the Minnesota action in favor of the Florida action. Ex. B. But the Florida derivative plaintiffs provide no reason why the Florida action should take precedence over this one

During a meet and confer with Plaintiff's counsel on August 14, 2025, Defendants learned that counsel for the Florida derivative plaintiffs made threats against Plaintiff's counsel in this action if Plaintiff did not move to dismiss his action without prejudice. Rodney Decl. ¶11. Following that interference, Plaintiff in this action backtracked and filed the instant motion seeking dismissal *without prejudice* in entirety, including with respect to demand futility. *See* Ex. E; ECF No. 49 ("Pl's Dismissal Mot.").

**Plaintiff's motion for voluntary dismissal omits the true reasons for dismissal**. Plaintiff's voluntary dismissal motion fails to disclose these reasons. Instead, he simply (and cryptically) states that he seeks dismissal "to pursue alternative remedies under Minnesota state law" and highlights that his "voluntary dismissal is made without prejudice and therefore will not have any preclusive effect on any other action or Target shareholder to pursue claims." Pl's Dismissal Mot. 2. Specifically, Plaintiff notes that "the claims will continue to be pursued" in the Florida derivative action alleging "identical or substantially similar claims." *Id.* at 3.

**The true reasons are particularly inappropriate here**. Left unsaid is that his request for voluntary dismissal would, if granted, facilitate the Florida derivative plaintiffs' attempt to litigate the demand issue before a forum unfamiliar with Minnesota law, to which the Florida derivative plaintiffs have misstated Minnesota law, and which they contend is hostile to Target and DEI. This all became clear after Defendants filed a motion

---

beyond their attempt to shop for a forum they believe will be more favorable. Indeed, none of the Florida derivative plaintiffs live in Florida.

to transfer the Florida derivative action and a related Florida securities class action to the District of Minnesota.  That motion raised a number of arguments, including (as relevant here) that Minnesota courts are better poised to adjudicate issues of Minnesota law like the demand futility standard at issue in both cases.  *In re Target S'holder Deriv. Litig.*, 25-cv-00021 (M.D. Fla.), ECF No. 51 at 22-24.  In opposing transfer, the Florida derivative plaintiffs incorrectly told the Florida court that "Delaware law[] is a fair characterization of the burden [plaintiff] faces in establishing demand futility under Minnesota law."  Fla. Transfer Opp. 14 (cleaned up).  That is plainly wrong, as Defendants' motion to dismiss explains and as Plaintiff here admits.  MTD 4-7 ("Delaware and Minnesota law differ with respect to the requirements for demonstrating demand futility." (quoting *In re Medtronic Deriv Litig.*, 68 F. Supp. 3d 1054, 1062 (D. Minn. 2014))); *see also infra* I.A.[3]

Moreover, the Florida derivative plaintiffs admitted in a court filing that they prefer litigating in Florida because, they say, "Florida has emerged as a nationwide leader in actively opposing DEI."  Fla. Transfer Opp. 19.  But that political reason is contrary to Target's interests and Minnesota's interest in regulating its resident corporations like Target, *see* Minn. Stat. §302A.251 subd. 5 (constituency statute expressly permits Minnesota fiduciaries to weigh "societal considerations" like DEI).

At bottom, Plaintiff here recognized that he faced an imminent adverse decision on the issue of demand futility under Minnesota law.  The instant motion seeks to avoid the

---

[3] Despite misstating the law on demand futility, the Florida derivative plaintiffs opposed Defendants' motion to file a reply brief to clarify that issue.  *Target Deriv.*, ECF No. 59.

preclusive effect of that adverse decision so that the Florida derivative plaintiffs can litigate demand futility in a forum that is unfamiliar with Minnesota law, which they are seeking to mislead about Minnesota law, and that they contend is "actively opposing DEI," in the hope that the Florida forum will reach a different outcome.

## ARGUMENT

## I. VOLUNTARY DISMISSAL WITHOUT PREJUDICE AS TO DEMAND FUTILITY WOULD BE IMPROPER.

Unlike a private plaintiff action, a derivative action is a representative action on behalf of a corporation. *In re Medtronic, Inc. S'holder Litig.*, 900 N.W.2d 401, 406 (Minn. 2017). The corporation is the "real party in interest" and the plaintiff "is allowed to act in protection of [the corporation's] interest somewhat as a 'next friend' might do for an individual." *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947). In this way, derivative actions are creatures of equity; they seek to "redress" alleged "breaches of fiduciary duties by corporate managers." *Id.* Thus, courts must be "alert" to see that plaintiffs *actually* seek equity, and that this "peculiar remedial process is in no way abused." *Id.*

Plaintiff purports to sue on behalf of Target, and accordingly owes a fiduciary duty to act in Target's best interest. *See* MTD at 29 (collecting cases). To ensure equity is being sought and Target's interests are being served, Rule 23.1 provides that "[a] derivative action may be . . . voluntarily dismissed . . . only with the court's approval." Fed. R. Civ. P. 23.1(c). Courts must analyze the voluntary dismissal of a derivative action under Rule

41(a)(2), which permits a plaintiff to dismiss only "on terms that the court considers proper." Fed. R. Civ P. 41(a)(2); *see also* Pl's Dismissal Mot. 2-3 (citing Rule 41(a)(2)).

As the Eighth Circuit makes clear, when a voluntary dismissal is subject to the court's scrutiny under Rule 41(a)(2), "a district court is *obligated* to address the plaintiff's purported reason for the voluntary motion to dismiss and determine whether the stated purpose is proper." *Tillman v. BNSF Ry. Co.*, 33 F.4th 1024, 1028 (8th Cir. 2022) (cleaned up) (emphasis added); *accord Thatcher,* 659 F.3d at 1213 (8th Cir. 2011) (remanding because district court failed to analyze purpose). In determining whether voluntary dismissal without prejudice is proper, courts in this Circuit consider whether:

- "the party has presented a proper explanation for its desire to dismiss," *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.3d 941, 950 (8th Cir. 1999);

- another "party will be prejudiced," *Kern v. TXO Prod.*, 738 F.2d 968, 970 (8th Cir. 1984); and

- dismissal "would be a misuse of judicial resources," *Tikkanen v. Citibank*, 801 F. Supp. 270, 273 (D. Minn. 1992).

Each of these factors firmly weighs against dismissal without prejudice here.

### A. Plaintiff's Reason for Seeking Dismissal Without Prejudice as to Demand Futility Is Improper.

Under Eighth Circuit precedent, "a party is not permitted to dismiss merely to escape an adverse decision nor to seek a more favorable forum." *Hamm*, 187 F.3d at 950 (citing *Int'l Shoe v. Cool*, 154 F.2d 778, 780 (8th Cir. 1946)). Plaintiff's actual purpose violates both of these strictures (*infra* I.A.1-2), and his stated justifications fail (*infra* I.A.3).

### 1. Seeking To Avoid an Imminent Adverse Decision Is Improper.

Recognizing that he needed to make a demand on Target's board before filing suit, Plaintiff agreed to voluntarily dismiss his complaint *with prejudice* as to demand futility. Ex. C. Plaintiff even drafted a proposed order to that effect, *id.*, confirming the fact that he inevitably faced an adverse decision on that issue. Only after the Florida derivative plaintiffs made threats did Plaintiff here back out of the agreement to dismiss *with prejudice* as to demand futility. Ex. E. Thus, the instant motion "appears to be an attempt to avoid an adverse decision," making dismissal without prejudice improper. *Murray v. Marchbanks*, No. 4:16-cv-198-SNLJ, 2017 WL 2964015, at *2 (E.D. Mo. June 19, 2017) (denying motion to voluntarily dismiss without prejudice); *accord Graham*, 998 F.3d 800, 805 (8th Cir. 2021) (dismissing claims with prejudice where plaintiff sought voluntary dismissal without prejudice "to avoid adverse judgment in federal forum"); *Morrow v. U.S.*, No. 21-cv-1003-MAR, 2021 WL 4347682, at *3 (N.D. Iowa July 28, 2021) (denying motion to voluntarily dismiss without prejudice where plaintiff sought to avoid imminent adverse decision); *In re Walt Disney Co. Deriv. Litig.*, C.A. No. 15452, 1997 WL 118402, at *4 (Del. Ch. Mar. 13, 1997) (same where plaintiff sought voluntary dismissal two weeks after defendants filed dispositive motion on plaintiff's failure to adequately allege demand futility to pursue litigation in another, more favorable jurisdiction).

### 2. Forum Shopping Is Improper.

Binding Eighth Circuit precedent also bars a plaintiff from voluntarily dismissing so that other plaintiffs can litigate "in another, arguably more favorable forum," in the hope

that the other forum will reach a different outcome.  *See Hamm*, 187 F.3d at 951 (rejecting voluntary dismissal).[4]  Nevertheless, Plaintiff attempts just that here.

As set forth above, the reason the Florida derivative plaintiffs pressured Plaintiff here to dismiss *without prejudice* is to permit the Florida derivative plaintiffs to litigate in a forum they view as more favorable.  *Supra* 8-9.  *See, e.g.*, *Mehle v. Trinity Highway Prods.*, 131 F. Supp. 3d 857, 859 (D. Minn. 2015) ("[O]ur Court of Appeals has reiterated, time and again, that a party is not permitted to dismiss merely to seek a more favorable forum.") (citations omitted); *Kennedy v. State Farm Mut. Auto. Ins.*, 46 F.R.D. 12, 15 (E.D. Ark. 1969) (denying voluntary dismissal where the plaintiff sought to have another forum "apply to this case another body of substantive law which would or might deprive the defendant of an apparently good defense [in] this forum.").

The attempted forum shopping is particularly improper here, as the Florida derivative plaintiffs have already misrepresented the law on demand futility to the Florida court, claiming that Delaware law is a "fair characterization" of the demand futility standard under Minnesota law.  Fla. Transfer Opp. 14.  But Minnesota courts—both state and federal—have repeatedly reiterated that Minnesota's pre-suit demand requirement is stricter than Delaware's.  *See, e.g.*, *Medtronic Deriv.*, 68 F. Supp. 3d at 1062; *La. Munic.*

---

[4] In a derivative action, this prohibition is particularly strict, as any deference to Plaintiff's forum-related choices and strategies is "considerably weakened".  *See Koster*, 330 U.S. at 530.  That's because, in a representative action, "there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts," so individual preferences do not matter. *Id.* at 524.  In fact, the representative plaintiff is a "mere phantom . . . with interest enough to enable him to institute the action and little more." *Id.* at 525.

10

*Police Emps. Ret. Sys. v. Finkelstein*, No. 27-cv-11-23986, 2012 WL 10057353, at *3 (Minn. Dist. Ct. May 29, 2012); MTD 7 (collecting cagses).[5]

The Florida derivative plaintiffs also admit that they prefer to litigate in Florida because, according to them, "Florida has emerged as a nationwide leader in actively opposing DEI and ESG." Fla. Transfer Opp. 19-20. But, as the Supreme Court has held, "[n]o principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations." *CTS Corp. v. Dynamics Corp.*, 481 U.S. 69, 89 (1987). Target is a Minnesota-based company, Compl. ¶16, thus, **Minnesota law**—not Florida—law governs Target's internal affairs. *Gomes v. Am. Century Cos., Inc.*, 710 F.3d 811, 815 (8th Cir. 2013). And Minnesota's "constituency statute" expressly permits its corporations and directors to "consider the interests of the corporation's employees, customers, suppliers, and creditors, the economy of the state and nation, community and societal considerations" in determining the corporation's "best interests," Minn. Stat. §302A.251 subd. 5; *see also* MTD 19-20.

Courts across jurisdictions have denied motions for voluntary dismissal that would facilitate an attempt to misapply the law. *See, e.g.*, *In re Oracle Deriv. Litig.*, 808 A.2d 1206, 1215 (Del. Ch. 2002) (denying motion for voluntary dismissal where plaintiffs

---

[5] The only authority the Florida derivative plaintiffs cited to support this mischaracterization actually comes out the other way. In *Kococinski*, the parties *agreed* to apply the Delaware standard. 935 F.Supp.2d 909, 917 (D. Minn. 2013). However, the court there still noted that "under Minnesota law," "it is arguable that demand is never futile" because Minnesota's special litigation committee statute "may allow a board with no disinterested members to appoint an independent nonboard member to serve on a special litigation committee." *Id.* at 917 n.13.

moved to dismiss per an agreement with parallel action's plaintiffs, who were attempting to "have the California state courts ignore the substantive law of [Delaware]."); *see also Home Owners' Loan Corp. v. Huffman*, 134 F.2d 314, 318 (8th Cir. 1943) (denying dismissal under Rule 41(a)(2) "when there is substantial doubt whether the courts will not apply [governing] rules, and when the plaintiff's purpose is so to maneuver the litigation that the defendant will lose his existing advantage").

### 3.    Plaintiff's Stated Justifications Fail

Plaintiff's only explanation of his reasons for voluntary dismissal is "to pursue alternative remedies under Minnesota state law."   Pl's Dismissal Mot. 2.   This is insufficient for two reasons.

*First*, he offers no detail about which "alternative remedies" he seeks to pursue, as the Eighth Circuit requires.   *See Paulucci v. City of Duluth*, 826 F.2d 780, 783 (8th Cir. 1987) (denying voluntary dismissal where plaintiffs failed to "advise the district court what claims might be filed in the future or why their present claim could not be litigated").[6]

---

[6] It's unclear what Plaintiff even means by "pursue alternative remedies under Minnesota state law."  To the extent that simply means Plaintiff intends to make a demand, that is all the more reason dismissal should be *with prejudice* as to demand futility.  To the extent "pursue alternative remedies under Minnesota state law" means Plaintiff intends to refile this action in state court, that "presents an improper basis for voluntary dismissal."  *Mehle*, 131 F. Supp. 3d at 860.  To the extent Plaintiff's ambiguity is strategic, that too is improper. *Paulucci*, 826 F.2d at 783 (denying voluntary dismissal where plaintiff failed to specify what claims might be pursued in the future); *see also Williams v. Ford Motor Credit Co.*, 627 F.2d 158, 159-60 (8th Cir. 1980) (abuse of discretion to grant a plaintiff's motion for dismissal without prejudice after the defendant files a dispositive motion, if the plaintiff's motion "fails to disclose the reason for seeking the dismissal without prejudice" and "[t]he only possible basis for the dismissal without prejudice appears to be that plaintiff feared the trial court might grant the [defendant's] motion").

*Second*, his explanation is entirely *consistent* with the original agreement to dismiss with prejudice as to demand futility and without prejudice as to the remaining issues. Plaintiff already indicated he intended to make a demand on Target's board of directors. Ex. C.  A dismissal with prejudice as to the issue of demand futility would not preclude him from seeking to "pursue alternative remedies under Minnesota state law."  Thus, Plaintiff has not offered a proper explanation for voluntary dismissal without prejudice.

## B.      Dismissal Without Prejudice as to Demand Futility Would Prejudice Target and the Individual Defendants.

Granting Plaintiff's motion would also prejudice Target and the Individual Defendants.  *See Kern*, 738 F.2d at 970.  As noted above, a derivative action is a creature of equity.  *Koster*, 330 U.S. at 522; *see also Schoon v. Smith*, 953 A.2d 196, 202 (Del. 2008).  Courts must be "alert" to ensure that the derivative "process is in no way abused." *See Koster*, 330 U.S. at 522.  Specifically, they must "prevent shareholders from suing in place of the corporation in circumstances where the action would disserve the legitimate interests of the company or its shareholders." *See Daily Income Fund v. Fox*, 464 U.S. 523, 532 n.7 (1984) (requirements of Rule 23.1); *accord* Wright & Miller, *Fed. Prac. & Proc.* § 1839.  Thus, unlike in a typical private plaintiff action, courts may not credit a derivative plaintiff's convenience or strategic objectives over the interests of the corporation.  Here, voluntary dismissal without prejudice would prejudice Target for three reasons (*infra* I.B.1-3), and Plaintiff's conclusory statement to the contrary does not move the needle (*infra* I.B.4).

### 1.    Endless Re-Litigation of Demand Futility Is Prejudicial.

*First*, Target and the Individual Defendants would be prejudiced by voluntary dismissal without prejudice because it would force them to continue to litigate the demand futility issue across the country.  Plaintiff's attempt to avoid an imminent adverse decision on that issue prejudices Defendants because it "deprives [Defendants] of the benefit of a decision in its favor" on an issue where plaintiff "cannot prevail . . . as a matter of law." *Clinard v. Wash. Reg'l Med. Ctr.*, No. 5:20-cv-05188, 2021 WL 4776694, at *2 n. 1 (W.D. Ark. Oct. 13, 2021) (citing & quoting *Int'l Shoe,* 154 F.2d at 780).  Where, as here, "plaintiffs concede that they have no defense" to defendant's dispositive motion, "it would be an abuse of discretion to deny defendant [] a final favorable judgment on [its dispositive motion] by dismissing plaintiff's complaint without prejudice."  *Millsap by Millsap v. Jane Lamb Mem'l Hosp.*, 111 F.R.D. 481, 483-84 (S.D. Iowa 1986); *accord. Disney*, 1997 WL 118402, at *4 (denying voluntary dismissal where plaintiff sought to "dash in and out of a forum based on tactical considerations and an assessment that their case looks weak in light of the governing law"); *Catibayan v. Fischer Engineering & Maintenance Co.*, No. 14060, 1997 WL 666969, at *3 (Del. Ch. Oct. 17, 1997) (same where request "smacks of forum shopping in an effort to disconcert the defendants rather than move forward toward resolution of the outstanding governance dispute").

### 2.    Misrepresentation of Minnesota Futility Law Is Prejudicial.

*Second*, as set forth above, the Florida derivative plaintiffs have already misrepresented Minnesota law on demand futility to the Florida court.  Fla. Transfer Opp. 14.  Where a voluntary dismissal risks another plaintiff seeking to misapply

governing law in another forum, that "threaten[s] [the corporation] with substantial prejudice." *Oracle*, 808 A.2d at 1216; *see also Kennedy*, 46 F.R.D. at 15 (recognizing "legal prejudice to subject the defendant to the risk that plaintiff may succeed in inducing the [other forum's] courts to refuse to apply [the forum's] law"); *Home Owners*, 134 F.2d at 318 (recognizing "grave prejudice" from loss of forum "when there is substantial doubt whether the [other forum's] courts will [] apply [governing] rules").

### 3. Supplanting Minnesota Law on Internal Affairs Is Prejudicial.

*Third*, it would be an abuse of the derivative action to use it as a vehicle to solicit another state's regulation of the internal affairs of a Minnesota corporation. *See CTS*, 481 U.S. at 89 ("No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations."); *see also Oracle*, 808 A.2d at 1213 ("[I]f the internal affairs of business corporations were not governed solely by the law of their chosen domicile, and were instead subject to a myriad of inconsistent and supplemental requirements by other states, the burden on the rights of stockholders to carry out joint economic activity through the corporate form would be markedly impaired, to their detriment, and likely to the nation's."). As stated above, that is the Florida derivative plaintiffs' stated political objective here, *see supra* I.A.2. *See, e.g.*, *Pillsbury v. Honeywell*, 191 N.W.2d 406, 413 (Minn. 1971) (rejecting shareholder's plan "designed to further petitioner's political and social beliefs"). And their objective is particularly troubling, as it is directly contrary to Minnesota's constituency statute, *see supra* I.A.2.

Even courts applying the laws of states without constituency statutes hold that it is an abuse of the derivative action to use it as a vehicle to second guess the judgment of a

corporation or its shareholders in balancing how to "avoid[] political blowback" against harm to other interests like "corporate culture and employee morale." *Simeone v. Walt Disney Co.*, 302 A.3d 956, 972 (Del. Ch. 2023). That's what the Florida derivative plaintiffs are trying to do here, too. Their political antagonism toward DEI is directly contrary to the interest of Target and its shareholders, who overwhelmingly voted *against* anti-DEI shareholder proposals for the last two years. Ex. G at 6 (95.6% voted against); Ex. H at 4 (91.5% voted against). *See, e.g.*, *Nat'l Ctr. for Pub. Pol'y Rsch. v. Schultz*, No. 2:22-cv-00267-SAB, 2023 WL 5945958, at *4 (E.D. Wash. Sept. 11, 2023) (rejecting derivative plaintiff's "goal of dismantling what it sees as destructive DEI and ESG initiatives" because that goal would "cause significant harm to [the corporation]" and "lacks the support of the vast majority of [the corporation's] shareholders"); *see also Meimaris v. Hudner*, No. 94-cv-7082-JSM, 1995 WL 413164, at *1 (S.D.N.Y. July 12, 1995) (dismissing plaintiff's complaint for "pursuing a personal agenda" that does not "adequately represent the interest of the other shareholders of the corporations on whose behalf he seeks to bring this action").

### 4.    Plaintiff's Conclusory Statement to the Contrary Fails.

Against that clear prejudice to Target and Defendants, Plaintiff offers a narrow statement that "Target shareholders . . . will not be prejudiced by the Action's dismissal" because "there have been no decisions on dispositive motions in this action." Pl's Dismissal Mot. 2-3. That fails on its own terms for three reasons.

*First*, it incorrectly relies on the standard for voluntary dismissal under Rule 41(a)(1), which grants plaintiffs a right to dismiss without court approval before an answer

or summary judgment motion has been filed.  Fed. R. Civ. P. 41(a)(1).  But Plaintiff moved under Rule 41(a)(2), as he must, because dismissal of a derivative action requires court approval under 23.1(c).

*Second* (and relatedly), neither Rule 41(a)(1) nor the cases cited in Plaintiff's motion grapple with the representative nature of derivative actions and the broader harms discussed above.

*Third*, Plaintiff's own cases work against him.  For instance, *Lamb v. XTO Energy* implicitly recognizes that Defendants *would* suffer prejudice if a dispositive motion had been filed and Plaintiff's dismissal had merely sought to avoid an imminent adverse decision.  No. 4:13-cv-1025-L, 2014 WL 4815915, at *2 (N.D. Tex. Sept. 29, 2014).  That's precisely the case here: there is no dispute that Plaintiff failed to make a demand, and that his theory of futility fails as a matter of law.  *See supra* I.B.1 (collecting authorities denying requests for voluntary dismissal based on prejudice to defendants where plaintiff seeks to avoid an adverse decision).

Thus, clear prejudice militates against granting Plaintiff's motion.

### C.    Dismissal Without Prejudice as to Demand Futility Would Be a Misuse of Judicial Resources.

Finally, dismissal without prejudice as to demand futility would be "a waste of judicial time and effort."  *Hamm*, 187 F.3d at 950.  As a threshold matter, Rule 41(a)(2) dismissal may be denied even in cases at their early stages like this one, before significant judicial resources have been expended.  *See, e.g., Thatcher*, 659 F.3d at 1214 (reversing and remanding 41(a)(2) voluntary dismissal without prejudice at the motion to dismiss

stage where lower court had failed to consider that plaintiff's purpose was likely forum-shopping that would not benefit those he was claiming to represent); *Wingo v. State Farm Fire & Cas. Co.*, No. 13-cv-3097-S-FJG, 2013 WL 4041477, at *2 (W.D. Mo. Aug. 8, 2013) (denying same due to forum shopping). Proceedings are also further along here than in the Middle District of Florida. Indeed, oral argument on Defendants' motion to dismiss in this action was calendared nearly two weeks before the operative complaint was even filed in the Florida derivative action. *Compare* ECF No. 44, *with Target Deriv.*, No. 2:25-cv-00021-JLB-KCD, ECF No. 49. And the Florida derivative action is stayed pending resolution of the Defendants' motion to transfer that action to this forum. *Target Deriv.*, No. 2:25-cv-00021-JLB-KCD, ECF No. 67. It would not be efficient to dismiss this action and force Defendants to litigate the derivative action in Florida on an indefinite timeline, particularly as "threshold questions regarding compliance with . . . Rule 23.1 [are] obviously controlled by [Minnesota's] substantive corporation law. Such questions are more properly decided here rather than another jurisdiction." *See Disney*, 1997 WL 118402, at *4.

Plaintiff does not even try to point to any "efficiencies to be gained" by granting his motion. *Olson v. Skateville, Inc.*, No. 19-cv-352-DWF-TNL, 2021 WL 1648769, at *4 (D. Minn. Mar. 30, 2021). Rather, he appeals to the "related consolidated shareholder derivative action . . . currently pending" in the Middle District of Florida. Pl's Dismissal Mot. 3.[7] But the existence of proceedings in another forum does not mean dismissal

---

[7] Plaintiff identifies the related Florida derivative action as a reason that "Target shareholders will not suffer any prejudice." Pl's Dismissal Mot. 3. But as discussed, the

without prejudice on this issue will conserve any resources. In fact, the opposite is true. Not only is that action stayed—further underscoring the efficiency of deciding *this* derivative action *now*—but a motion to transfer has been filed in Florida, which, if granted, would simply boomerang the issue back to this Court again. If that occurs, the "the lost time and expenses associated with refiling a case" would add "additional time and effort on the part of both the Parties and the Court" when proceedings restart in this district. *Loc. 682 Health & Welfare Tr. Fund v. Power Hauling*, No. 4:08-cv-01131-ERW, 2009 WL 3242137, at *2 (E.D. Mo. Oct. 5, 2009). Plaintiff offers no reason for kicking the can down the road.

Even setting aside transfer of the Florida action, Plaintiff is asking this Court to leave open the issue of demand futility so that he, or another shareholder, can try again in another Minnesota court (or elsewhere) under the same theory. Such gamesmanship should not be tolerated and would be a waste of Minnesota courts' judicial resources as well. *Disney*, 1997 WL 118402, at *4 (denying voluntary dismissal and noting "[o]ne must wonder what theory of judicial efficiency or comity would promote a rule that encourages plaintiffs' counsel to file in multiple jurisdictions, force defendants to commit resources from coast to coast, and then allow plaintiffs' counsel, at their own whim, to move the lines of battle after they have already begun to form.").[8]

---

Florida derivative plaintiffs openly admit they prefer Florida as a forum because they believe it is hostile to DEI, in direct contravention to the preferences of Target shareholders. *Supra* I.A.2.

[8] While Plaintiff's motion does not identify any inefficiency or inconvenience from denying his motion, it bears noting that any such concerns are "not . . .weighty," "given

Thus, the judicial resources factor also weighs against dismissal without prejudice. Because all factors weigh against dismissal without prejudice, doing so would be improper.

## II.    THE COURT SHOULD DENY PLAINTIFF'S MOTION AND RESUME THE SCHEDULE ON DEFENDANTS' MOTION TO DISMISS.

Because dismissal without prejudice is improper, Defendants respectfully request that the Court deny Plaintiff's motion and resume briefing and oral argument on Defendants' motion to dismiss. *See, e.g., Wingo*, 2013 WL 4041477, at *2 (resuming briefing on 12(b)(6) motion after denying plaintiff's 41(a)(2) motion); *Donner v. Alcoa, Inc.*, 709 F.3d 694 (8th Cir. 2013) (resuming existing proceedings on remand following reversal of dismissal on appeal). The demand futility issue is fully briefed in that motion and presents a simple path to dismissal. MTD 4-7. An involuntary dismissal by granting Defendants' motion to dismiss also obviates any concerns Plaintiff has about needing to give notice to Target shareholders. *See Abbey v. Control Data Corp.*, 603 F.2d 724, 728 n.5 (8th Cir. 1979) ("The notice provisions of Fed. R. Civ. P. 23.1 do not apply to involuntary dismissals . . .").

In the alternative, subject to notice to the plaintiff, Rule 41(a)(2) "permits the district court to dismiss an action with prejudice in response to a plaintiff's motion for dismissal without prejudice." *Jaramillo v. Burkhart*, 59 F.3d 78, 79 (8th Cir. 1995). This remedy

---

the applicability of [Minnesota] law to this dispute and the legitimate interest of the defendants in having this state's courts grapple with" the issues of Minnesota law. *See Oracle*, 808 A.2d at 1215. Moreover, any argument that litigating in Florida would be more convenient "rings particularly hollow in light of plaintiff['s] calculated decision to file in [Minnesota] *after*" the Florida derivative action was filed. *See Disney*, 1997 WL 118402, at *4.

would also be appropriate, given Plaintiff's original agreement to dismiss *with prejudice* as to demand futility and without prejudice as to the remainder.  Should the Court opt for this path, however, Defendants respectfully request that the Court require Plaintiff to provide notice to Target shareholders, consistent with Rule 23.1.  *See* Fed. R. Civ. P. 23.1(c) ("Notice of a . . . voluntary dismissal . . . must be given to shareholders or members in the manner that the court orders.").  The same policies animating the court approval requirement also animate the notice requirement.  Wright & Miller, *Fed. Prac. & Proc.* § 1839 ("by requiring court approval and *notice* to the stockholders of any proposed dismissal or settlement, the corporate interests, as well as those of the other shareholders, can better be protected from unfair or disadvantageous agreements" (emphasis added)).  The gamesmanship undergirding this motion—and the attendant harm to Target and its shareholders—make notice incumbent here.  *See supra* I.B.  Moreover, certain courts have held that "[w]here notice is a prerequisite to a dismissal of a derivative action, a judgment of dismissal will not be accorded res judicata effect unless such notice was given." *Papilsky v. Berndt*, 466 F.2d 251, 257 (2d Cir. 1972).

Accordingly, should the Court opt to grant Plaintiff's motion for voluntary dismissal *with prejudice*, it should order Plaintiff to provide notice to Target shareholders.

## CONCLUSION

For the foregoing reasons, Target and Defendants respectfully request that the Court deny Plaintiff's motion for voluntary dismissal and resume the schedule on Defendants' motion to dismiss.

Date:  September 2, 2025                    Respectfully submitted,

                                           /s/ Sandra C. Goldstein
Jeffrey P. Justman                         Sandra C. Goldstein, P.C. (*pro hac vice*)
MN Bar No. 0390413                         Alexander J. Rodney (*pro hac vice* )
FAEGRE DRINKER BIDDLE &                     Jacob M. Rae (*pro hac vice*)
REATH LLP                                  Ashley P. Grolig (*pro hac vice*)
2200 Wells Fargo Center                    KIRKLAND & ELLIS LLP
90 South 7th Street                        601 Lexington Avenue
Minneapolis, MN 55402                      New York, NY 10022
Telephone: (612) 766-7000                  Telephone: (212) 446-4779
jeff.justman@faegredrinker.com             sandra.goldstein@kirkland.com
                                           alexander.rodney@kirkland.com
                                           jacob.rae@kirkland.com
                                           ashley.grolig@kirkland.com

                                           *Attorneys for Individual Defendants and
                                           Nominal Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 2, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which provided electronic service upon all counsel of record.

/s/ Sandra C. Goldstein
Sandra C. Goldstein, P.C. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4779
sandra.goldstein@kirkland.com